Maria SILVA

v.

**Manuel SILVA et al.**

**No. 79–433–Appeal.**

Supreme Court of Rhode Island.

June 8, 1982.

William J. Burke, William P. Butler, Pawtucket, for plaintiff.

Gunning, LaFazia & Gnys, Inc., Richard T. Linn, Netti C. Vogel, Providence, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

This is a civil action for negligence brought by the plaintiff, Maria Silva (Maria), to recover damages for injuries sustained when an automobile operated by the defendant, Paulo daSilva (Paulo), and in which Maria was a passenger, collided with another motor vehicle. At the time of the collision, Paulo, Maria's son, was seventeen years old and resided with his mother in the family home. The trial justice entered summary judgment against Maria on the ground that her suit was barred by the doctrine of parent-child immunity as set forth in *Matarese v. Matarese*, 47 R.I. 131, 131 A. 198 (1925). Maria appeals from this judgment.

The sole question before us now is whether to allow an automobile tort action between a parent and her unemancipated minor child.[1] In *Matarese v. Matarese, supra,*

---

1. The plaintiff also sued her husband, Manuel Silva (Manuel), who was the owner of the mo-

tor vehicle in which she was a passenger. The trial justice granted Manuel's motion for sum-

we held that public policy prevented such an action by the child against the parent. Although we have never dealt with the converse situation, the policy considerations presented in *Matarese* are also at issue in an automobile tort action brought by a parent against her child.[2] Therefore, in determining whether to allow the instant suit, we shall consider whether the parent-child immunity doctrine enunciated in *Matarese* is still viable today.

It is generally agreed that the doctrine of parent-child immunity in tort is of relatively recent origin. Unlike the doctrine of interspousal immunity, which had its roots in the common-law concept of the husband and wife as one legal person, *Digby v. Digby*, 120 R.I. 299, 303, 388 A.2d 1, 3 (1978), the parent-child immunity rule apparently had no basis in the English common law. *Sorensen v. Sorensen*, 369 Mass. 350, 353, 339 N.E.2d 907, 909 (1975); *Merrick v. Sutterlin*, 93 Wash.2d 411, 412, 610 P.2d 891, 891 (1980); Prosser, *Law of Torts*, § 122 at 865 (4th ed. 1971); McCurdy, *Torts Between Persons in Domestic Relation*, 43 Harv.L.Rev. 1030, 1059–60 (1930). Both English and American courts have historically allowed suits between parent and minor child in matters affecting property. McCurdy, *supra* at 1057; *see Duffy v. Reddy*, 64 R.I. 127, 11 A.2d 1 (1940). Professor Prosser has suggested that "there is no good reason to think that the English law would not permit actions for personal torts as well, subject always to the parent's privilege to enforce reasonable discipline against the child * * *." (Footnotes omitted.) Prosser, *supra* § 122 at 865.

The doctrine appears to have originated in 1891 in Mississippi. *Hewlett v. George*, 68 Miss. 703, 9 So. 885 (1891). In *Hewlett*, an unemancipated minor sued her mother for maliciously confining her in an insane asylum. Without citation to any authority, the Mississippi Supreme Court held that the child's suit was barred as a matter of public policy, reasoning that such actions would disrupt "[t]he repose of families and the best interests of society * * *." *Id.* at 711, 9 So. at 887.

Most states quickly followed in adopting the *Hewlett* rule. *See, e.g., McKelvey v. McKelvey*, 111 Tenn. 388, 77 S.W. 664 (1903); *Roller v. Roller*, 37 Wash. 242, 79 P. 788 (1905). Rhode Island recognized the rule of parental immunity for negligence actions brought by the unemancipated minor child in 1925. *Matarese v. Matarese, supra.*

No sooner had courts adopted the doctrine, however, than they began carving out exceptions to it. For example, courts did not apply the doctrine when the child was emancipated, *e.g., Logan v. Reaves*, 209 Tenn. 631, 354 S.W.2d 789 (1962), when the tortfeasor was deceased, *e.g., Dean v. Smith*, 106 N.H. 314, 211 A.2d 410 (1965), when the child was injured by a parent acting in his business capacity, *e.g., Trevarton v. Trevarton*, 151 Colo. 418, 378 P.2d 640 (1963), or when a willful or malicious tort was involved, *e.g., Nudd v. Matsoukas*, 7 Ill.2d 608, 131 N.E.2d 525 (1956). These exceptions reflected a growing disapproval of the doctrine and foreshadowed its eventual demise. Today, a majority of jurisdictions would allow an automobile tort action between a parent and an unemancipated minor child. *E.g., Gibson v. Gibson*, 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648 (1971); *Black v. Solmitz*, 409 A.2d 634 (Me. 1979); *Sorensen v. Sorensen, supra; Briere v. Briere*, 107 N.H. 432, 224 A.2d 588 (1966); *Gelbman v. Gelbman*, 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969); *Elam v. Elam*, 275 S.Ct. 132, 268 S.E.2d 109 (1980).

---

mary judgment. The plaintiff brought an appeal from this judgment but waived such appeal at oral argument.

**2.** The great bulk of cases and commentaries on the subject of parent-child immunity deal only with the immunity of the parent in a child versus parent tort action rather than with the converse situation. Courts that have considered the issue, however, have without exception treated the child's immunity as a corollary to that of the parent. *E.g., Balts v. Balts*, 273 Minn. 419, 142 N.W.2d 66 (1966); *Gelbman v. Gelbman*, 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969); *Ertl v. Ertl*, 30 Wis.2d 372, 141 N.W.2d 208 (1966).

We believe that these courts are correct in determining that the principles underlying the doctrine no longer have any validity.[3] The reasons traditionally given to justify the doctrine, and upon which the *Matarese* decision relied, are that to allow actions in tort between parent and child would undermine parental authority and disrupt domestic harmony.[4]

The former argument is unconvincing when applied to situations such as the instant case. No question of parental control arises when a parent's negligent operation of a motor vehicle causes injury to his child. *Gibson v. Gibson,* 3 Cal.3d at 920, 479 P.2d at 652, 92 Cal.Rptr. at 292. The "domestic harmony" argument is equally devoid of merit. As we noted in *Digby* in rejecting a similar argument advanced in support of *interspousal* immunity, the potential for family discord does not bar actions involving property, though it would appear that such actions would be equally likely to disrupt filial harmony. *Digby v. Digby,* 120 R.I. at 303, 388 A.2d at 3. Indeed, "the risk of family discord is much less in negligence actions, where an adverse judgment will normally be satisfied by the defendant family member's insurance carrier, than in property actions, where it will generally be paid out of the defendant's pocket." *Gibson v. Gibson,* 3 Cal.3d at 919, 479 P.2d at

651, 92 Cal.Rptr. at 291. Moreover, an uncompensated tort is hardly more likely to preserve peace in the family than is an action between parent and child to recover for that tort. *Sorensen v. Sorensen,* 369 Mass. at 360, 339 N.E.2d at 913. On the contrary, the family relationship might well be severely strained if family resources were depleted by the long-term care of an injured parent or child. *See Gibson v. Gibson,* 3 Cal.3d at 919, 92 Cal.Rptr. at 291, 479 P.2d at 651; *Nocktonick v. Nocktonick,* 227 Kan. 758, 768, 611 P.2d 135, 141–42 (1980); *Sorensen v. Sorensen,* 369 Mass. at 362–63, 339 N.E.2d at 914. Because liability-insurance coverage exists in most automobile collision cases between parent and child, there is little likelihood that recovery of damages in such cases would disrupt the family relationship. *Williams v. Williams,* 369 A.2d 669, 672 (Del.1976); *France v. A.P.A. Transport Corp.,* 56 N.J. 500, 505, 267 A.2d 490, 493 (1970).

Although the existence of insurance has effectively negated the family-harmony justification, it has also given rise to the argument that to allow actions in tort between parent and child would foster fraudulent or collusive actions aimed at securing unjustified recoveries from insurance carriers. We rejected this argument in *Digby,* however, noting that wrongdoers should not

---

**3.** We note that academic writers on the subject also have universally condemned the doctrine. *See, e.g.,* Prosser, *Law of Torts,* § 122 at 864–68 (4th ed. 1971); *Personal Injuries: Parental Liability and Automobile Negligence,* 20 Washburn L.J. 460 (1981); *Tort—Parental Immunity,* 56 Wash.L.Rev. 319 (1980); *The Demise of Parent-Child Tort Immunity,* 12 Williamette L.J. 605 (1976); *see also Hastings v. Hastings,* 33 N.J. 247, 253, 163 A.2d 147, 151 (1960) (Jacobs, J., dissenting) (listing forty-six commentaries critical of the doctrine).

The Restatement of Torts has adopted a policy of qualified abrogation of the immunity:
"Parent and Child
(1) A parent or child is not immune from tort liability to the other solely by reason of that relationship.
(2) Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious." Restatement (Second) *Torts* § 895G at 426 (1979).

**4.** There are other reasons that have been advanced to support the rule. *See generally* McCurdy, *Torts Between Persons in Domestic Relation,* 43 Harv.L.Rev. 1030, 1073–77 (1930). Some proponents of the rule have relied on an analogy to interspousal immunity. Because interspousal immunity has been abrogated in cases involving automobile torts, the analogy to the interspousal rule now supports a similar approach to such suits between parent and child. Another contention in support of parent-child immunity is that to allow such actions would raise the possibility that the tortfeasor will succeed to the victim's recovery in the event of the latter's death. We believe that the mere possibility of such an occurrence should not bar all tort claims between parent and child. Finally, it has been argued that to permit such suits might deplete the family exchequer at the expense of the other family members. The presence of liability insurance has effectively destroyed this argument.

be immunized from liability "simply because the existence of liability insurance may increase the temptation to engage in fraud or collusion." *Digby v. Digby*, 120 R.I. at 304, 388 A.2d at 3. The possibility of collusion exists in all cases. It is not magically removed by the child's attainment of legal majority. *Gelbman v. Gelbman*, 23 N.Y.2d at 438, 297 N.Y.S.2d at 532, 245 N.E.2d at 194. The chance that there may be more opportunity for fraud or collusion in one class of cases than another does not justify the barring of all cases of that class. *Nocktonick v. Nocktonick*, 227 Kan. at 769, 611 P.2d at 142. As the Supreme Court of California noted:

> "It would be a sad commentary on the law if we were to admit that the judicial processes are so ineffective that we must deny relief to a person otherwise entitled because in some future case a litigant may be guilty of fraud or collusion. Once that concept were accepted, then all causes of action should be abolished. Our legal system is not that ineffectual." *Klein v. Klein*, 58 Cal.2d 692, 695–96, 376 P.2d 70, 72–73, 26 Cal.Rptr. 102, 104–05 (1962).

In *Sorensen v. Sorensen*, 369 Mass. at 365, 339 N.E.2d at 915, the Supreme Judicial Court of Massachusetts addressed the collusion argument as follows:

> "The existence of collusion and lack of cooperation is not difficult to establish in the ordinary motor vehicle accident case. Prompt, effective insurance company investigation and the requirement of prompt reports of accidents to the registry of motor vehicles and to the insurer quickly establish the essential facts. Normally, any attempt at deviation from the facts by the insured will be speedily evident and will warrant disclaimer by the insurance carrier. The parent is usually represented by counsel provided by the insurance company. Such counsel is ever alert to protect the interests of the insurance company and ready to expose any attempts at collusive and fraudulent conduct. Any overt attempt at collusion constitutes a criminal offense and will be punishable as such."

Rhode Island has allowed interspousal suits in automobile tort cases since our decision in *Digby v. Digby, supra*, in 1978, yet there is no indication that the state subsequently has been deluged with collusive or fraudulent suits. We see no reason to expect a different result here. Should abuses occur, we believe that our judicial system has the capability of ferreting out false claims.

As Justice Cardozo stated, "Few rules in our time are so well established that they may not be called upon any day to justify their existence as means adapted to an end." B. Cardozo, *The Nature of the Judicial Process* 98 (1921). A rule immunizing a tortfeasor from liability and precluding his victim from recovering compensation solely because of the relationship between them should be followed only if there are compelling reasons therefor.[5] We believe that in the case of an automobile tort action between a parent and her child, such reasons do not exist. We therefore hold that suits between unemancipated minor children and their parents for injuries suffered as a result of the negligent operation of a motor vehicle are not barred by the immunity doctrine. Whether an immunity exists between parent and child in other situations will be determined when each situation is properly before us. We recognize, however, that there may be parental exercises of discretion and authority which should be immune from judicial scrutiny. *Black v. Solmitz*, 409 A.2d at 639; *Sorensen v. Sorensen*, 369 Mass. at 366, 339 N.E.2d at 916.

---

**5.** To the argument that this court should defer to the Legislature the decision of whether to repudiate the immunity, we reply that we are free to reconsider and abandon a judicially created rule of law if "the rule has become inconsonant with the needs of our contemporary society and * * * its further application will work injustice * * *." *Digby v. Digby*, 120 R.I. 299, 301–02, 388 A.2d 1, 3 (1978); *accord, Ritter v. Narragansett Electric Co.*, 109 R.I. 176, 187, 283 A.2d 255, 261 (1971); *Becker v. Beaudoin*, 106 R.I. 562, 569–70, 261 A.2d 896, 900–01 (1970); *Rampone v. Wanskuck Buildings, Inc.*, 102 R.I. 30, 34–35, 227 A.2d 586, 588 (1967).

We hold that the defense of parent-child immunity in an automobile tort action between parents and their unemancipated child is abrogated as to the instant case and prospectively as to all other causes of action arising thirty or more days after the filing of this opinion.

The plaintiff's appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court for further proceedings.