Wendy LaBOUNTY et al.

v.

Stephen LaBOUNTY.

82–494–Appeal.

Supreme Court of Rhode Island.

Aug. 22, 1985.

John F. McBurney, Pawtucket, James A. Currier (Rice Dolan Kiernan & Kershaw), Providence, for plaintiffs.

Paul A. Anderson (Anderson Henning & Anderson), Robert A. Goldberg (Iannuccillo & Hines Inc.), Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment of the Superior Court that awarded the sum of $240,000 plus interest and costs to Wendy LaBounty (Wendy) in her action against her former husband, Stephen LaBounty (Stephen). The trial justice directed a verdict in favor of Stephen in respect to the claim of his son, Brian La-Bounty (Brian). Stephen appeals from the award to Wendy. Brian appeals from the directed verdict in favor of his father. We sustain Stephen's appeal in part and deny Brian's appeal. The facts of the case insofar as pertinent to this appeal are as follows.

On July 25, 1976, a collision took place between a vehicle owned and operated by Stephen and a vehicle owned and operated by Donald Leffort (Leffort). Wendy and Brian were passengers in Stephen's vehicle. An action was brought on behalf of Stephen, Wendy and Brian against Leffort on April 26, 1978. At this time, Stephen, his wife, and his son were plaintiffs in the action and Leffort was the sole defendant. On April 3, 1981, Leffort moved to add Stephen as a third-party defendant. The motion was granted, and a third-party complaint was filed against Stephen on June 16, 1981. Leffort, through his property-damage insurance company, had filed a subrogation action in the Sixth Division District Court in October 1977 for property damage against Stephen only. In 1981 new counsel appeared on behalf of Wendy and Brian, and on January 22, 1982, this attorney moved to amend the complaint so that Stephen would be deleted as a party plaintiff and added as a party defendant. An objection was filed on Stephen's behalf but no attorney appeared to press the objection, and the motion was granted on February 25, 1982. By this time Wendy and Stephen were divorced.

Although nearly six years had elapsed since the date of the accident, the bar of the statute of limitations was not raised by Stephen's counsel. When the case was reached for trial on May 25, Donald Leffort reached a settlement with Wendy and Brian. The sum of $10,000 was paid to Wendy and $9,000 to Brian (substantially exhausting Leffort's policy limits). Wendy executed a joint tortfeasor release as consideration for this settlement.[1] The release in pertinent part read as follows:

---

1. The release was not introduced in evidence during the course of the trial. However, it was brought to the attention of the trial justice after verdict and was relied upon by him in reducing the amount of the verdict.

"It is understood and agreed that this release shall reduce to the extent of the pro rata share of the said Donald J. Leffort, his agents, servants and employees or any of them any damages recoverable by me against the said Stephen R. LaBounty by reason of the said injuries alleged to have been sustained by me and to that end in further consideration of the aforesaid payment to me *I do hereby release and forever quitclaim and discharge the said Stephen R. LaBounty, his agents, servants and employees and their respective heirs, executors, administrators and assigns and all other persons, firms and corporations whatsoever and each of them from any and all actions, causes of action, claims and demands for, upon or by reason of the pro rata share caused by or attributable to the said Donald J. Leffort,* his agents, servants and employees and their respective heirs, executors, administrators and assigns because of the injuries sustained by me in connection with the aforesaid incident of July 25, 1976.

"This release is given under and in compliance with the provisions of Rhode Island General Laws, 1956, Sections 10–6–1 to 10–6–11 inclusive and all amendments thereof and additions thereto." (Emphasis added.)

Trial proceeded against Stephen, and at the close of plaintiffs' evidence, counsel for Stephen moved for a directed verdict in respect to Brian and also moved to assert the statute-of-limitations defense in respect to Wendy's claim. The trial justice denied the motion to allow a plea of the statute of limitations at that juncture but reserved decision concerning the interfamily-immunity issue relating to Brian's claim against Stephen.

When the case was submitted to the jury, special interrogatories concerning the percentage of negligence of the parties was requested of the jurors as well as a general verdict. The special interrogatories resulted in a determination that Leffort was 75 percent responsible for the accident, Stephen was 25 percent responsible for the accident, and the total damages suffered by Wendy were found to be in the aggregate sum of $250,000. The trial justice, after receiving the verdict, granted the motion for direction in Stephen's favor in respect to the claim brought by his son, Brian. He then ordered that judgment enter in Wendy's favor against Stephen in the sum of $62,500, which sum represented 25 percent of the total damages of $250,000.

Thereafter, in response to a motion to alter or amend the judgment, the trial justice modified the original judgment to the sum of $240,000, thus reducing the $250,000 total damages by the $10,000 paid for the release rather than by Leffort's pro rata share of 75 percent as had been set forth in the special interrogatory answered by the jury. The findings of the jury were not altered or amended in any way by the court, but only the financial effect thereof was changed. Consequently, the amount of plaintiffs' judgment was increased from $62,500 plus interest and costs to $240,000 plus interest and costs.

Stephen, in support of his appeal, challenges the trial justice's refusal to allow the statute of limitations to be asserted at the close of plaintiffs' evidence and the alteration of the judgment to increase the amount thereof. Brian appeals from the direction of a verdict against him denying his claim as a matter of law. The parties raise a number of issues that may be considered under three headings.

## I

### THE STATUTE OF LIMITATIONS

It is conceded that the statute of limitations would not be a bar to Brian's claim against his father, and therefore, the sole question in regard to the statute of limitations would relate to Wendy's claim. There is no question that at the time this action accrued, July 25, 1976, the applicable statute of limitations for personal injuries, G.L.1956 (1969 Reenactment) § 9–1–14, as amended by P.L.1976, ch. 188, § 1, required

that an action be brought within three years of the date of accrual. There is further no question that the amended complaint was permitted by the court to be filed on February 25, 1982, approximately five and a half years after the date of accrual of the action. The provisions of Rule 15(c) of the Superior Court Rules of Civil Procedure would not be applicable to the filing of this amended complaint since the record is clear that Stephen had received no prior notice of the institution of an action against him. Nor did he know, nor should he have known, that but for a mistake the action would have been brought against him. This action was completely novel and would have clearly been barred by the statute of limitations. This bar would not have been cured by the rule concerning the relation back of amendments.

■ It is also beyond question, however, that the rules of civil procedure require that defense of the statute of limitations be affirmatively raised. Rule 8(c) provides that "a party shall set forth affirmatively * * * statute of limitations * * * and any other matter constituting an avoidance or affirmative defense." We have held in *Duquette v. Godbout*, R.I., 416 A.2d 669, 670 (1980), that this is a mandatory provision and that failure to plead an affirmative defense results in its waiver. *Jakobsen v. Massachusetts Port Authority*, 520 F.2d 810, 813 (1st Cir.1975); 1 Kent, *R.I.Civ. Prac.* § 8.6 at 87 (1969). We stated in *Duquette*, R.I., 416 A.2d at 670, that the special pleading of affirmative defenses protects the complaining party from unfair surprise at trial.

■ It is noteworthy that in the instant case counsel for Stephen did not argue in support of his objection to the amendment of the complaint adding him as a party defendant. Moreover, the affirmative defense of the statute of limitations was not raised until after the close of plaintiffs' evidence. To allow the interposition of the defense at that point would render nugatory our holding in *Duquette. See Associat-* ed Bonded Construction Co. v. Griffin Corp., R.I. 438 A.2d 1088, 1091 (1981). Consequently, the trial justice was correct in refusing to allow the defense of the statute of limitations to be raised at that point in the trial of the case.

II

## THE EFFECT OF THE JOINT TORTFEASOR RELEASE

Stephen asserts in support of his appeal that the trial justice erred in failing to give effect to the full thrust of the joint tortfeasor release given by Wendy to Donald J. Leffort. He asserts that the trial justice should have reduced Wendy's judgment by the pro rata share attributed to Donald J. Leffort by the jury. The special interrogatories submitted to the jurors were answered by a finding that Leffort was 75 percent responsible for the accident and Stephen was 25 percent responsible. Thus, Stephen asserts that the trial justice was correct in the first instance when he reduced the judgment by 75 percent and incorrect when he later reduced the judgment only by $10,000, which represented the actual consideration paid. With this contention we agree.

There is no doubt that the joint-tortfeasor release specifically purported to release and discharge Stephen from

"[a]ny and all actions, causes of action, claims and demands for, upon or by *reason of the pro rata share caused by or attributable to the said Donald J. Leffort * * ** because of the injuries sustained by me in connection with the aforesaid incident of July 25, 1976." (Emphasis added.)

The release went on to say that it "[wa]s given under and in compliance with the provisions of Rhode Island General Laws, 1956, Sections 10–6–1 to 10–6–11 inclusive and all amendments thereof and additions thereto."

■ The pertinent portion of the statute to which reference is made is found in G.L.1956 (1969 Reenactment) § 10–6–7. This section reads as follows:

"A release by the injured person of one (1) joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors *in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.*" (Emphasis added.)

We have previously construed this statute in *Augustine v. Langlais*, 121 R.I. 802, 804, 402 A.2d 1187, 1188 (1979), and determined that it was free from ambiguity and that the words stated therein should be given their plain and obvious meaning. In that case we decided an issue that is precisely the converse of the issue in the case at bar. There, the actual amount paid for the release was greater than the pro rata share of the joint tortfeasor with whom the settlement was effectuated. We stated clearly and unequivocally that

"[t]he statute clearly directs that the damage award must be reduced by either the amount of consideration paid for the release, or the proportion of reduction provided by the release, *whichever is greater.*" *Augustine*, 121 R.I. at 805, 402 A.2d at 1189. (Emphasis in original.)

In reaching this conclusion, we cited *Daugherty v. Hershberger*, 386 Pa. 367, 373, 126 A.2d 730, 733 (1956). In that case, the Supreme Court of Pennsylvania stated the proposition applied in *Augustine, supra,* and the converse of that proposition. This statement is equally unequivocal.

"In other words, if the proportion of reduction provided by the release is greater than the amount of the consideration paid for the release, such proportion of reduction prevails, but if, on the other hand, the consideration paid for the release is greater than the proportion of reduction provided by the release, then the amount of the consideration paid for the release prevails." *Daugherty*, 386 Pa. at 373, 126 A.2d at 733.

In the case at bar no one disputes that the release provided that Stephen should be discharged by the pro rata share caused by or attributable to Donald J. Leffort. It is further beyond question that the pro rata share in this instance was dramatically greater than the actual consideration paid. Indeed, taking into account the interest computed to the date of judgment in the Superior Court, the pro rata reduction would have exceeded $300,000, whereas the amount of the consideration was merely $10,000. Under the mandate of the statute as well as the terms of the release, it was the duty of the trial justice to give to Stephen the benefit of the pro-rata-share reduction. Consequently, he was correct in reducing the original judgment from $240,-000 to $62,500 (principal sum only) but erred when he later modified the principal amount of this judgment to $240,000, thereby giving credit to Stephen only for the amount of consideration paid. This latter determination violated the command of the statute when read in conjunction with the terms of the release.

■ Wendy argues that the result should be different in this case by reason of the fact that Stephen had not filed a cross-claim in the case at bar. In support of this assertion, Wendy cites *Markham v. Cross Transportation, Inc.,* 119 R.I. 213, 376 A.2d 1359 (1977). This case does not support Wendy's assertion. The only holding of *Markham* relating to the absence of a cross-claim was the lack of standing on the part of the defendants who had not filed a cross-claim to move for a new trial in respect to codefendants who were found by the jury to be not liable. That holding has no application to the case at bar. Certainly, Stephen has ample standing to raise a question concerning the amount of the judgment that he should pay to Wendy. The absence of a cross-claim in this case is immaterial since Stephen is not attempting to assert any claim against Leffort but only to obtain the benefit of the release secured by Leffort for Stephen's own benefit. Obviously, Wendy's release to Leffort cuts off any right that Stephen would have

against Leffort unless he paid to Wendy a greater proportion of the judgment than the 25 percent that the jury found Stephen was required to pay by reason of his proportionate fault in accordance with § 10–6–3. In place of this right of contribution, Stephen is given by the statutory framework and Wendy's voluntary act a release in the amount of the pro rata share that Leffort would otherwise be required to pay. Consequently, Stephen lacks no standing to assert the issue raised by him in this case as a result of his failure to file a cross-claim against Leffort.

### III

### BRIAN'S CLAIM AGAINST STEPHEN

Brian appeals from a judgment entered by the Superior Court pursuant to a motion for directed verdict upon which decision had been reserved. The motion was granted following a verdict by the jury that would have awarded Brian the sum of $12,-000.

The motion for directed verdict in Brian's case was based entirely upon the law of this state as it existed at the time of the accrual of this action, July 25, 1976. At that time the controlling opinion of this court was *Matarese v. Matarese*, 47 R.I. 131, 131 A. 198 (1925). In that case this court held that there was no right of action between an unemancipated minor child and his parents arising out of tortious conduct. This case constituted the controlling law at the time that the case at bar was tried in the Superior Court. However, we overruled the doctrine of *Matarese* in *Silva v. Silva*, R.I., 446 A.2d 1013 (1982), seven days after the judgment in the instant case was rendered. In *Silva* we held that suits between unemancipated minor children and their parents for injuries suffered as the result of the negligent operation of motor vehicles were no longer to be barred by the principle of parent-child immunity. However, we went on to state that this holding would be applicable only to the party in *Silva* and prospectively to "all other causes of action arising thirty or more days after

the filing of this opinion." There is no question that the opinion in *Silva* rendered June 8, 1982, could not by its own terms be applicable to a claim that arose years before on July 25, 1976.

 As a consequence, the trial justice committed no error in applying the applicable law in respect to parent-child immunity in existence at the time of his decision on the motion for directed verdict.

For the reasons stated, Stephen's appeal is sustained in part. Brian's appeal is denied and dismissed. The papers in the case may be remanded to the Superior Court for a recalculation of the judgment in Wendy's favor in accordance with this opinion.

The Chief Justice participated in the oral argument and in the decision of the court, but he did not participate in the publication of the formal opinion.