Jeanette CALISE et al.

v.

HIDDEN VALLEY CONDOMINIUM
ASSOCIATION, INC., et al.

No. 99–452–Appeal.

Supreme Court of Rhode Island.

June 11, 2001,

Timothy D. O'Hara, East Providence, for Plaintiff.

Thomas C. Angelone, John G. Rallis, Providence, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

In this appeal we hold that a Superior court trial justice, at a hearing held pursuant to G.L.1956 § 9-20-2 to determine the amount of the plaintiff's damages,[1] committed no error in precluding two defaulted defendants from attempting to question

---

1. The defendants here, were defaulted for failing to answer or otherwise defend as required by Rule 12 of the Superior Court Rules of Civil Procedure, and default judgments were duly entered thereafter, pursuant to Rules 55 and 54(b) of the Superior Court Rules of Civil Procedure.

and litigate their liability to the plaintiffs by seeking to introduce evidence of probable comparative negligence on the part of two former defendants, who because of settlement stipulations, had been dismissed with prejudice as parties in the case.

# I

## Facts/Procedural History

On July 3, 1992, Jeanette Calise was injured when she slipped and fell on a common walkway leading to her condominium at 19 Trellis Drive in West Warwick. She attributed her fall to the negligence of the Hidden Valley Condominium Association, Inc. (the Association) and, as a result, she filed a negligence action against the Association. In that action she sought damages for her personal injuries. Her husband, Vincent Calise, alleged a loss of consortium and sought damages, pursuant to G.L.1956 § 9-1-41.

The Association filed an answer to the plaintiffs' complaint and denied any alleged liability. During pretrial discovery, it indicated that other parties might be responsible for the negligent condition alleged to have caused Jeanette's slip and fall. Jeanette and her husband (hereinafter collectively referred to as the plaintiffs) then moved to amend their complaint to include as party defendants, the Downing Corporation (Downing), Downing/Hidden Valley, Inc. (Hidden Valley), D'Ambra Construction Company, Inc. (D'Ambra), and Lincoln Sealcoating Company (Lincoln). On June 5, 1995, the motion was granted and the plaintiffs amended their complaint accordingly.

Subsequently, D'Ambra and Lincoln each duly filed answers to the plaintiffs' amended complaint.[2] Downing and Hidden Valley (collectively, the defendants), however, neglected to file answers to the plaintiffs' amended complaint, as required by Rule 12 of the Superior Court Rules of Civil Procedure. Subsequently, on April 7, 1997, they were defaulted pursuant to Rule 55(a) of the Superior Court Rules of Civil Procedure.

Six months after the default orders had been entered against Downing and Hidden Valley, an attorney representing both parties filed an appearance for them; however, he failed to move to vacate the defaults, or move to file answers out of time. In the meantime, pretrial discovery took place between the plaintiffs and the co-defendants, D'Ambra and the Association, in preparation for trial.

On January 13, 1999, about twenty-one months after they both had been defaulted, Downing and Hidden Valley somehow stumbled into the continuing litigation and filed motions for leave to file cross-claims against the defendants, D'Ambra and the Association. In response, D'Ambra and the Association objected to the motions and filed their own motions for leave to file cross-claims against the two, defaulted and now awakened defendants. The record indicates that no ruling ever was made on these motions. Thereafter, both D'Ambra and the Association elected to settle with the plaintiffs and were given full releases. Orders were duly entered dismissing them with prejudice as party defendants in the case.[3]

At this juncture, the only parties left remaining in the case were the plaintiffs and the two long-defaulted parties, Down-

---

**2.** On February 27, 1997, the trial court granted Lincoln Sealcoating's motion for summary judgment and final judgment in favor of Lincoln was entered pursuant to Rule 54(b).

**3.** In consideration of their respective settlements, D'Ambra paid the plaintiffs $7,500 and Hidden Valley Condominium Association paid them $10,000.

ing and Hidden Valley. Because the defaults of Downing and Hidden Valley had served to establish their liability to the plaintiffs, no trial on that issue was required. Accordingly, pursuant to § 9–20–2, the plaintiffs moved for hearing at which to present evidence of their damages.

At the damages hearing, Downing and Hidden Valley, believing that their former co-defendants might be liable for some proportionate share of the plaintiffs' damages, attempted to introduce evidence of the purported "comparative negligence" of those parties, pursuant to G.L.1956 chapter 6 of title 10, entitled Contribution Among Joint Tortfeasors (Uniform Contribution Among Tortfeasors Act). The trial justice excluded the proffered evidence and, after hearing the evidence and reviewing the record, found the plaintiffs' damages to be $60,000, plus interest and costs to Jeanette, and $5,000, plus interest and costs to Vincent.[4] The final judgment amount was not offset by the settlement amounts previously paid to the plaintiffs by the joint tortfeasors in consideration of their releases.[5] Downing and Hidden Valley timely appealed.

## II

### Analysis

#### 1. Comparative Negligence of the Joint Tortfeasors

■ The defendants initially concede that the entry of default for their failure to answer the plaintiffs' complaint precluded them from introducing evidence of the plaintiff Jeanette's comparative negligence at the hearing held to assess the plaintiffs' damages. However, they maintain that each defendant that ever was in the case is liable only for its proportionate share of the plaintiffs' damages. Accordingly, they contend that, for purposes of indemnification and/or contribution pursuant to our Uniform Contribution Among Tortfeasors Act, their right both to fully participate at the hearing on damages and to mitigate their own damages necessarily entitled them to introduce evidence of the comparative negligence of the settling joint tortfeasors who no longer were parties to the case.

This contention, as it involves any comparative negligence on the part of the defendants who formerly were in the case, basically is flawed. If, as the defendants concede, they may not show comparative negligence on the part of the plaintiffs then, because no other defendant ever has established any negligence attributable to the plaintiffs, comparative negligence is not at issue in this case.

■ Our comparative negligence statute, § 9–20–4, is not a comparative fault statute. It comes into play only after negligence is first established on the part of both the plaintiff and the defendant. Once that is established, the plaintiff's "damages shall be diminished by the finder of fact in proportion to the amount of negligence attributable" to the plaintiff. Section 9–20–4. Our comparative negligence statute, it must be noted, only permits comparison of either the negligence between a plaintiff

---

**4.** The record contains only a transcript of the hearing; there is neither a transcript of counsels' final arguments nor of the trial justice's bench decision. The award for damages was entered as a final judgment by the trial justice.

**5.** The defendants assert that the trial justice erred when he did not offset the damages award by the amount already paid by the joint tortfeasors in consideration of their releases. However, because this point has been conceded by the plaintiffs, we need not address the issue on appeal. The plaintiffs' damages are in fact being offset by the amount of the previous settlements. There is no double recovery for the plaintiffs in this case.

and a defendant or, in the case of multiple defendants, the comparison of any negligence on the part of the plaintiff and on the part of each particular defendant. It does not contemplate or address the proportionate negligence between the various defendants. It is perhaps for this reason that § 9–20–4.1 provides that there is no set-off permitted under the comparative negligence statute. Accordingly, we are concerned with consideration of our Uniform Contribution Among Tortfeasors Act and its probable application to the particular fact scenario before us.

■ The defendants assert that the trial justice erred in precluding them from introducing evidence that might show contributing negligence on the part of the settling defendants at the hearing to establish the plaintiffs' damages. This is an issue of first impression for this Court.

■ Rule 12(h) states that "[a] party waives all defenses and objections which the party does not present either by motion as hereinbefore provided or, if the party has made no motion, in the party's answer or reply * * *." "[T]he failure to raise an affirmative defense in a timely manner constitutes a waiver of that defense." *World–Wide Computer Resources, Inc. v. Arthur Kaufman Sales Co.*, 615 A.2d 122, 124 (R.I.1992). "Failing to plead or answer bespeaks an implied concession that the party is liable, or perhaps an indifference to the outcome of the litigation." *Kalamazoo Oil Co. v. Boerman*, 242 Mich.App. 75, 618 N.W.2d 66, 73 (2000). Although "a default does not concede the amount of damages[,] * * * the factual allegations of a complaint will be taken as true upon default[.]" *Bashforth v. Zampi-*

*ni*, 576 A.2d 1197, 1200 (R.I.1990). Thus, " '[d]ue to [their] default, defendant[s are] in a position of having admitted each and every material allegation of the plaintiff[s'] complaint except as to the amount of damages suffered by plaintiff[s].' " *Kalamazoo Oil Co.*, 618 N.W.2d at 72. " 'The element of proximate cause, as well as negligence, having been alleged in plaintiff[s'] complaint is admitted due to the default of defendant[s] and requires no further proof.' " *Id.*

■ "[A] default judgment may not be entered without a hearing on damages unless the amount claimed is liquidated or ascertainable from definite figures contained in documentary evidence or detailed affidavits." *Bashforth*, 576 A.2d at 1200.[6] Thus, "[w]hile a default judgment constitutes an admission of liability, the *quantum* of damages remains to be established by proof [at the hearing] unless the amount is liquidated or susceptible of mathematical computation." *Id.* (quoting *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974)). (Emphasis added.) Such a hearing "is *limited* to the question of damages." *Id.* (Emphasis added.)

In *Bashforth*, this Court concluded that a defaulted defendant is entitled to discovery in personal injury litigation to determine the causal relationship between a plaintiff's injuries and the plaintiff's amount of claimed damages. *See Bashforth*, 576 A.2d at 1200. Such discovery facilitates the ascertainment of a reasonable figure for the plaintiff's unliquidated damages. *See id.* In this case, it is important to note that at the hearing to determine the plaintiffs' damages, pursu-

---

**6.** General Laws 1956 § 9–20–2 provides in pertinent part that:

"In all cases, except where otherwise provided, if judgment is rendered on default * * * damages shall be assessed by the court, with the intervention of a jury unless cause is shown why there should be no intervention of a jury. The claimant in any case may waive the intervention of a jury."

ant to § 9–20–2, the plaintiffs only burden was to prove the amount of damages they were entitled to recover from the defaulted parties, and not the comparative negligence, if any, of the settling defendants in relation to that of the two defaulted defendants. In addition, because liability was not at issue, Jeanette's comparative negligence, if any, that would have reduced the plaintiffs' damages could not be determined. If a reduction in damages had been warranted, it necessarily would have reduced the proportionate liability of all defendants, settling and defaulting alike.

 "There are three recognized categories of damages; they are compensatory, punitive, or nominal damages." *Murphy v. United Steelworkers of America Local No. 5705, AFL–CIO*, 507 A.2d 1342, 1346 (R.I.1986). "Compensatory damages are awarded to a person in satisfaction of or in response to a loss or injury sustained." *Id.* In the present case, the damages claimed by the plaintiffs were compensatory because they were "in satisfaction of or in response to a loss or injury sustained." *Id.*

 "Our policy is always to encourage settlement. Voluntary settlement of disputes has long been favored by the courts." *Homar, Inc. v. North Farm Associates*, 445 A.2d 288, 290 (R.I.1982). "Settlement of a disputed liability is as conclusive of the parties' rights as is a judgment that terminates litigation between them." *Id.* A joint tortfeasor has a valid and substantial interest in " 'buying his peace' through a release-and-settlement agreement." *Cooney v. Molis*, 640 A.2d 527, 530 (R.I.1994). "On many occasions parties settle a suit not only to limit their potential liability but also to 'avoid the continuing pressures, vexations and unpleasantness involved in litigation,' as well as the associated legal expenses." *Id.*

 As we have noted previously, the policy of the Uniform Contribution Among Tortfeasors Act:

"is to encourage rather than discourage settlements. The tortfeasor who settles removes himself entirely from the case so far as contribution is concerned if he is able and chooses to buy his peace for less than the entire liability. If he discharges the entire obligation it is only fair to give him contribution from those whose liability he has discharged." *Hawkins v. Gadoury*, 713 A.2d 799, 806 (R.I.1998) (quoting with approval Uniform Act, 12 U.L.A. 194, 196 § 1 cmt. (d) (1955 revision) (1996)).

"To encourage early settlement of claims * * * the injured party ought to be able to structure an early settlement with any willing alleged tortfeasor in a manner that enables him or her to be made whole, or as near thereto as possible, without providing him or her with a windfall or any excess recovery." *Merrill v. Trenn*, 706 A.2d 1305, 1311 (R.I.1998).

The record reveals that the defendants failed to answer the complaint and a default order was entered against them. This default order operated as an unqualified admission of their liability to the plaintiffs and precluded them from raising any affirmative defenses, all of which had been waived pursuant to Rule 12(h).

Because the plaintiffs' damages were unliquidated and not susceptible of mathematical computation, the defendants were entitled to contest only the causal relationship, if any, between the plaintiffs' injuries and the damages alleged. However, in an attempt to possibly reduce their own liability for the plaintiffs' damages, the defendants asserted that they should have been permitted to introduce evidence of any negligence on the part of their former co-defendants.

■ The record, we observe, reveals that after D'Ambra and the Association settled with, and paid consideration to, the plaintiffs in exchange for being fully released from the litigation and for having the plaintiffs' claims against them dismissed with prejudice, they were not parties to the subsequent hearing to determine the extent of the plaintiffs' damages. Indeed, considering that they no longer were parties to the litigation, even if they had wanted to challenge the plaintiffs' claimed damages, it is not clear that they would have had standing to do so.

"It is a well-settled doctrine that a plaintiff may recover 100 percent of his or her damages from a joint tortfeasor who has contributed to the injury in any degree. * * * The joint tortfeasor may *then* seek contribution pursuant to statute either by a separate action or by impleading the fellow joint tortfeasor under third-party practice." *Roberts–Robertson v. Lombardi*, 598 A.2d 1380, 1381 (R.I.1991) (per curiam). (Emphasis added.)

Neither remedy was employed here by the defendants who are the defaulted parties in this case.

We believe that "[a] default should have consequences * * *." *Rogers v. J.B. Hunt Transport, Inc.*, 244 Mich.App. 600, 624 N.W.2d 532, 537 (2001). If we were to accept the defendants' proposed theory of recovery then, pursuant to § 10–6–5,[7] if the settlement amounts paid to the plaintiffs by the co-defendants had exceeded the plaintiffs' total damages, the defendants would not have been liable to the plaintiffs for any damages whatsoever. Conversely, if the co-defendants' proportionate share of damages exceeded the settlement amount, the defendants' propor-

tionate share of damages automatically would be reduced. The results of this would be either (a) having settled a case in good faith, and having obtained a release from the plaintiff, a settling co-defendant would be liable for contribution to a defaulting defendant for his or her proportionate share of damages, as determined by the trial justice at the hearing; or, (b) a plaintiff would not be made whole because the defaulting party would pay only his or her proportionate amount of damages and, in view of the co-defendant's full release, the plaintiff could not collect the difference from the settling co-defendant. As a result, plaintiffs might very well be discouraged from entering into any pre-trial settlements with less than all defendants in a multi-defendant case. In addition, defendants would not want to settle if they thought it possible that they could be forced later to defend themselves against defaulting defendants on the merits of the lawsuit.

Consequently, rather than encourage the settlement of disputes, the opposite would occur. Such discouragement of settlements would be in direct contravention to the purpose and policy of the Uniform Contribution Among Tortfeasors Act. Thus, we conclude that the trial justice did not err when he excluded evidence of the alleged negligence of the settling joint tortfeasors. Because the defendants have not disputed the actual amount of damages awarded by the trial justice and because the plaintiffs concede that the award should be offset by the amount paid them in settlement by the former co-defendants in consideration of being fully released, the defendants, as the defaulting parties, are liable for paying only the balance remain-

7. General Laws 1956 § 10–6–5 provides that: "A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement."

ing of the plaintiffs' judgment for damages.

We respectfully disagree with the contention presented in the dissent that the Uniform Contribution Among Tortfeasors Act negates the consequences of the default by the defendants. Under the theory advanced by the dissent, the plaintiffs would bear the burden of proving not only the liability of the defaulting defendants but also the specific proportion of their liability as a percentage of the total liability borne by all defendants, including those who have settled with the plaintiffs. This is precisely the burden that plaintiffs would have been required to sustain if the defendants had not been defaulted and if the plaintiffs had not settled with the other defendants.[8]

Such a theory would place the defendants in a position more advantageous than that which they would have enjoyed had they answered the case. It must be remembered that under the dissent's theory, the plaintiffs would have the burden of proving liability without the benefit of discovery at a hearing on what traditionally has been designed to be only for proof of

the plaintiffs' damages. The entire theory of a default is that a defaulting defendant has forfeited the privilege of disputing liability. This sanction would apply to the proportion of liability, as well as the totality thereof. The greater necessarily must include the lesser. Otherwise, without taking any action whatever in his, her, or its own defense, a defaulting defendant might, just wait until the hearing on proof of plaintiff's damages and then force the plaintiff to bear the burden of proving all elements of liability, including the defaulted defendant's proportional share thereof in respect to other defendants who no longer are parties to the case by reason of settlement. Such a burden would be greater than that which would be placed upon a plaintiff in respect to a non-defaulting defendant who would in the course of the pretrial proceedings be required to respond to all the discovery requests that would prepare the plaintiff to meet such a burden.

The position the dissent advocates also would serve to effectively discourage, if not eliminate, pretrial settlements by de-

---

8. The dissent's reliance upon *Bashforth ' v. Zampini*, 576 A.2d 1197 (R.I.1990) and *LaBounty v. LaBounty*, 497 A.2d 302 (R.I.1985) is misplaced entirely.

 *Bashforth*, it should be noted, did not involve any pretrial settlement by either of the two defaulted defendants in that case. All that was at issue was whether the defaulted defendants could, before hearing on the plaintiff's proof of damages, engage in pretrial discovery to enable them to defend against the plaintiff's claimed injuries and resulting damages. Nothing in *Bashforth* says, as the dissent does here, that the defendants could litigate their respective comparative negligence, if any, that may have contributed to the plaintiff's injuries and damages. In fact, in *Bashforth*, this Court, in citing to the Arizona case of *Dungan v. Superior Court*, 20 Ariz.App. 289, 512 P.2d 52, 53 (1973), noted that prehearing discovery should be permitted to allow a defaulted defendant to discover

 facts "concerning the plaintiff's injuries and the amount of the plaintiff's claimed damages." *Bashforth*, 576 A.2d at 1200.

 *LaBounty* is completely inapposite to the case now before us. In *LaBounty*, there was no defaulted defendant and no proof of damage hearing. There, a full-blown trial on liability and damages had taken place. In that case involving two defendants, each defendant's liability and particular percentage of comparative negligence had been established after a Superior Court jury trial. All that *LaBounty* holds is that a trial justice is required to apportion each defendant's share of liability to satisfy the plaintiff's total verdict in proportion to the percentage of each defendant's negligence that was found to have contributed to the total of that verdict.

 The dissent, it appears, reads into *Bashforth* and *LaBounty* what is not really written in those cases.

fendants in any negligence case involving two or more defendants. If one of those defendants by initially ignoring the litigation and being defaulted can later at a § 9–20–2 proof-of-damage hearing reopen the question of the propriety of each pretrial settlement and litigate each former defendant's comparative negligence, if any, that might have contributed to the plaintiff's damages, such a radical procedure would turn upside down the long-established procedure that always has been followed in this state in a plaintiff's proof of damages hearing. We do not propose to reward a defaulting defendant in such a manner.

For the foregoing reasons, the defendants' appeals are denied and dismissed. The judgment appealed from is affirmed, and the papers in the case are remanded to the Superior Court.

Chief Justice WILLIAMS did not participate.

FLANDERS, Justice, dissenting.

I respectfully dissent. After the plaintiffs, Jeanette and Vincent Calise (the Calises) entered into a settlement with two of the alleged joint-tortfeasor defendants in this case, G.L.1956 § 10–6–7[9] of Rhode Island's Uniform Contribution Among Tortfeasors Act (UCATA)—consistent with the joint tortfeasor releases that the Calises provided to the settling defendants—reduced the Calises' damages claims against the defaulted joint-tortfeasor defendants. This damage-claim reduction occurred irrespective of the fact that these nonsettling defendants previously had been defaulted for failing to answer

the Calises' complaint against them. Indeed, the default served only to foreclose the defaulted defendants' ability to contest their liability for the Calises' damages arising from their alleged negligent conduct. But "a default does not concede the amount of damages," *Bashforth v. Zampini,* 576 A.2d 1197, 1200 (R.I.1990); nor does it eviscerate § 10–6–7. That statute instructs how to calculate damages in such cases as this one in which the plaintiffs have settled with and released for consideration some but not all of the joint-tortfeasor defendants. More particularly, § 10–6–7 requires that, in cases such as this one, the Calises' damage claims against the defaulted joint-tortfeasor defendants "shall be" reduced by the greater of (1) the amount of money the settling defendants had paid to the Calises, or (2) by the proportionate amount that corresponded to the settling defendants' relative degree of fault for the Calises' total damages. In fact, this is precisely how the Calises promised to treat their damage claims against the defaulting defendants in the release agreements they signed with the settling defendants.

Thus, I would hold that the entry of defaults against these joint-tortfeasor defendants in no way affected the required statutory reduction in plaintiffs' damage claim against them. This reduction occurred as a matter of law under UCATA because of plaintiffs' settlement and release of two other joint tortfeasors, who otherwise may have been liable to the defaulting defendants for contribution. Therefore, "[u]nder the mandate of the statute as well as the terms of the release,

---

9. General Laws 1956 § 10–6–7 provides that: "A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but *reduces the claim against the other tortfea-* sors in the amount of the consideration paid *for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid."* (Emphasis added.)

it was the duty of the trial justice to give [the Downing defendants] the benefit of the pro-rata share reduction." *LaBounty v. LaBounty,* 497 A.2d 302, 306 (R.I.1985) (holding trial justice erred in calculating damages against a non-settling joint tortfeasor defendant when he credited only the amount of consideration paid by the settling defendant instead of the larger amount of the settling defendant's pro-rata share of the liability). Hence, I would reverse and remand this case to the trial justice for a redetermination of damages in accordance with § 10–6–7.

### Facts and Travel

On July 3, 1992, Jeanette Calise allegedly slipped and fell on a common walkway leading to her condominium entrance. Seeking compensation for her personal injuries, medical expenses, loss of earning capacity, and pain and suffering that allegedly resulted from the fall, she filed a Superior Court complaint on June 9, 1994, against the Hidden Valley Condominium Association (HVCA), a nonprofit corporation that owned and maintained the condominium complex. In addition, her husband, Vincent Calise, alleged in the same complaint that he too was entitled to compensation (pursuant to G.L.1956 § 9–1–41) for the loss of consortium he allegedly suffered as a result of his wife's injuries after she slipped and fell. Shortly thereafter, the Calises amended their complaint by adding the Downing Corporation (Downing) and Downing/Hidden Valley Inc. (Downing HV) (collectively, the Downing defendants). The Calises alleged that the Downing defendants were additional owners and operators of the condominium. The Calises also sued Lincoln Sealcoating Company (Lincoln), which applied sealant on the walkway, and D'Ambra Construction Company (D'Ambra), which constructed the walkway.

On February 25, 1997, the Superior Court ruled that, on the undisputed facts presented, Lincoln was not negligent and, therefore, the court granted its motion for summary judgment. Later, on April 7, 1997, and pursuant to Rule 55 of the Superior Court Rules of Civil Procedure, a trial court clerk entered a default against the Downing defendants (defaulted defendants) for their failure to answer the complaint within the time required by Rule 12(a)(1)(A) of the Superior Court Rules of Civil Procedure. No default judgment, however, entered at that time.[10]

Almost two years later, on January 12, 1999, the Downing defendants filed motions for leave to file cross-claims against codefendants D'Ambra and HVCA for contribution and indemnification. Although the Downing defendants had been defaulted for failing to respond to plaintiffs complaint, they were not in default with respect to any claims they may have possessed against defendants D'Ambra and HVCA. Both D'Ambra and HVCA objected to the cross-claims and then, in turn, they filed their own motions for leave to file cross-claims against all the other defendants. The court held a hearing on the parties' cross-claim motions on January 25, 1999, and the parties presented arguments in connection with these motions. Although the motion justice took

---

**10.** Rule 55(b)(2) of the Superior Court Rules of Civil Procedure states:

"[I]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by statute."

the motions under advisement, he never rendered a decision on them.

On April 29, 1999, D'Ambra and HVCA (the settling defendants) entered into separate settlement agreements with the Calises whereby HVCA agreed to pay $10,000 and D'Ambra agreed to pay $7,500 to them. In return the Calises executed joint-tortfeasor releases for both settling defendants and filed a stipulation with respect to all claims dismissing both settling defendants from the case with prejudice. But the releases expressly provided that the Calises' damage claims against the remaining joint-tortfeasor defendants would be reduced by the amount of the settlement or by the amount of the settling defendants' proportional responsibility for the Calises' damages, whichever amount was greater. Thus, before the proof-of-claim hearing even began against the defaulted defendants and at the very moment when the Calises settled with these other two alleged joint tortfeasors, the existence of § 10–6–7's damage-claim reduction was a *fait accompli* because the Calises already had agreed to reduce their damage claims against the defaulted defendants as provided for in the releases they signed. In short, only the amount of their total damages and the size of the claim reduction they had agreed to remained to be determined.

Thereafter, on August 30, 1999, following the hearing on oral proof of the Calises' reduced damage claim, the trial justice ordered the defaulted defendants to pay the plaintiffs $65,000, plus interest and costs.[11] The $65,000, however, represented the Calises' total damages, unreduced by either the consideration received by the Calises in exchange for the releases or the proportional liability they released (if it was in fact greater than the consideration paid), when they entered into the

release agreements with the settling defendants. At the proof-of-claim hearing, the trial justice allowed the defaulted defendants to present evidence concerning the nature and extent of the plaintiffs' total damages, but he refused to allow them to introduce evidence to establish the proportional responsibility of the settling defendants—that is, their relative degree of fault for the Calises' damages—or, for that matter, to establish the amount of money the Calises had received from the settling defendants. In fine, the trial justice refused to apply § 10–6–7's mandate for reducing the Calises' claim for damages in light of the earlier settlement. As a result, the court failed to reduce the total damages judgment it awarded against the defaulted defendants, as required by law, by the greater of either the amount the settling defendants had paid to the Calises in consideration for obtaining their releases or by the proportional liability attributable to the settling defendants that the Calises had released when they settled with them.

### Analysis

The defaulted defendants contend that the trial justice committed reversible error by failing to reduce the Calises' damages claim as required by § 10–6–7. They argue that the trial justice erred by excluding evidence of the proportional responsibility of the settling joint-tortfeasor defendants for the Calises' damages. The trial justice also erred, they contend, by refusing to reduce the damages claim against them by the amount of consideration paid by the settling defendants, as provided for in § 10–6–7. In essence, defaulted defendants argue, the trial justice erred by failing to apply UCATA's mandatory claim-reduction provision when calculating the damages against a nonsettling

11. The order mistakenly named HVCA as a defaulted party rather than Downing HV.

joint tortfeasor, and by failing properly to "take an account or to determine the amount of damages," as required by Rule 55. Because the central issue in this case is a question of law—whether § 10–6–7 caused a reduction in the Calises' claims for damages against the defaulted defendants when the Calises released the settling defendants—this Court applies a *de novo* standard of review on appeal. See *Canario v. Culhane,* 752 A.2d 476, 479 (R.I.2000).

On appeal, even the Calises grudgingly acknowledged that the defaulted defendants "may be allowed to receive a credit for the sums paid by the [settling defendants]" under § 10–6–7. But because of their default, they say, the defaulted defendants should not have been allowed to introduce evidence to prove that that those "sums paid" to the Calises in settlement were less than "any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid." Section 10–6–7.[12] Without being allowed to introduce any evidence of the settling defendants' proportional responsibility for the Calises' damages, the defaulted defendants were unable to prove that the proportion of liability that the Calises had released when they settled with two of the joint tortfeasor defendants was greater than the con-

sideration the Calises had received when they released these settling defendants. Therefore, I believe the trial justice erred when he prevented the defaulted defendants from proving that they were entitled to a full proportional reduction of the claim against them, as provided for in § 10–6–7.

"Section 10–6–7 is a verbatim enactment of section four of the Uniform Contribution Among Tortfeasors Act of 1939 which has been adopted by several other states. The cases that have considered statutes identical to § 10–6–7 universally hold that amounts paid by settling defendants *must* be credited to the verdict amount returned against nonsettling joint tortfeasors." *Augustine v. Langlais,* 121 R.I. 802, 804–05, 402 A.2d 1187, 1189 (1979). (Emphasis added.)

"These decisions are predicated upon the fundamental doctrine that an injured person is entitled to only one satisfaction of the tort, even though two or more parties contributed to the loss." *Id.* at 805, 402 A.2d at 1189. Moreover, we have held that the "purpose of the act is to avoid the injustice of having one joint tortfeasor pay more than his or her fair share of [the] damages."[13] *Wilson v. Krasnoff,* 560 A.2d 335, 339 (R.I.1989). "The statute [§ 10–6–7] clearly directs that *the damage award*

12. The mere fact that the settling defendants were no longer parties to the lawsuit would not have precluded the defaulted defendants from introducing evidence of the settling defendants' proportional responsibility for the Calises' damages. The settling defendants could have been deposed, subpoenaed, and otherwise "discovered" against to establish their proportional responsibility for the Calises' total damages. Moreover, the defaulted defendants themselves could introduce evidence on this point. *See Cooney v. Molis,* 640 A.2d 527, 529 (R.I.1994) (holding that although a settling joint tortfeasor is not a party to the lawsuit "the power of subpoena [still] remains as a tool to present * * * testimony

[by the settling tortfeasor] to the jury"); *see also Bashforth v. Zampini,* 576 A.2d 1197, 1200 (R.I.1990) (holding that defaulted defendants must be permitted to engage in the discovery process to effectively protect their rights at the damages-assessment hearing).

13. Nevertheless, a joint tortfeasor may be compelled to pay more than his or her proportional liability if contribution cannot be collected fully from another joint tortfeasor and if the court reallocates the uncollectible portion of the damages to all the remaining joint tortfeasors. Restatement (Third) Torts, § C21 at 204 (1999).

*must be reduced by either the amount of consideration paid for the release, or the proportion of reduction provided by the release, [w]hichever is greater." Augustine,* 121 R.I. at 805, 402 A.2d at 1189. (Emphasis added.) Thus, this mandatory reduction of the plaintiffs' damage claim was unaffected by any previously entered default against non-settling defendants because the default only foreclosed the defaulting defendants' ability to contest liability (including the existence of a duty owed to the Calises, the defaulted defendants breach thereof, and the fact that the breach proximately caused the Calises' damages); but it did *not* override § 10–6–7 and change the manner in which plaintiffs' damage claim had to be calculated, nor did it bar the admission of evidence that might be relevant in establishing the proportional liability of the settling joint tortfeasors at the hearing on proof-of-claim.

If found liable as joint tortfeasors, all the defendants in this case would have been held jointly and severally liable for the damages plaintiffs suffered.[14] Moreover, plaintiffs would have been entitled to recover 100 percent of their damages from any one of them, subject to the right of that paying defendant to seek contribution from the other joint tortfeasors according to their relative degree of fault.[15] See *Roberts–Robertson v. Lombardi,* 598 A.2d 1380, 1381 (R.I.1991); *see also* W. Page

Keeton, *Prosser and Keeton on the Law of Torts,* § 46 (5th ed.1984). Thus, a joint tortfeasor held liable and compelled to pay more than his, her, or its "pro rata share of the final money judgement," still has a right to seek contribution from the other joint tortfeasors pursuant to §§ 10–6–3 and 10–6–4.[16] See *Nelson v. Ptaszek,* 505 A.2d 1141, 1143 (R.I.1986); *Markham v. Cross Transportation, Inc.,* 119 R.I. 213, 230, 376 A.2d 1359, 1368 (1977). Therefore, absent a settlement and release of the other joint tortfeasors, the defaulted defendants would have been entitled to seek contribution from the other joint tortfeasors if they had been compelled to pay more than their proportionate share of the liability. *Id.; see also Hackett v. Hyson,* 72 R.I. 132, 136, 48 A.2d 353, 355 (1946) (holding that an amount received in satisfaction of judgment from one tortfeasor will reduce the claim against the others).

Yet, in this case, because the Calises chose to release the settling defendants from all liability in exchange for cash payments, the defaulted defendants lost their right to seek contribution against the settling defendants by operation of § 10–6–7 and § 10–6–8. *See Cooney v. Molis,* 640 A.2d 527, 529 (R.I.1994). The releases signed by the Calises, however, clearly provided that, in accordance with § 10–6–8, if the released defendants are jointly

**14.** Section 10–6–2 defines joint tortfeasors as "two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them; provided, however, that a master and servant or principal and agent shall be considered a single tortfeasor."

**15.** Section 10–6–3 provides that: "The right of contribution exists among joint tortfeasors; provided however, that when there is a disproportion of fault among joint tortfeasors, the relative degree of fault of the joint tortfeasors shall be

considered in determining their pro rata shares."

**16.** Section 10–6–4 provides that: "A joint tortfeasor is not entitled to a final money judgment for contribution until he or she has by payment discharged the common liability or has paid more than his or her pro rata share of the final money judgment. Actions for contribution shall be commenced not later than one year next after the first payment made by a joint tortfeasor which has discharged the common liability or is more than his or her pro rata share thereof."

and severally liable with other nonsettling defendants, then the consideration paid for the releases "shall be received in reduction of the total damages recoverable [by the Calises] against all other tortfeasors or in the amount of the pro rata or proportionate share of liability of the released parties, *whichever amount is greater.*"[17] (Emphasis added.) Therefore, although § 10–6–8 denied defaulted defendants their right to seek contribution from the settling defendants because of the releases, they were entitled under § 10–6–7 and by the very terms of the releases themselves to receive "in place of [contribution]" a reduction in the Calises' claims against them equal either to the consideration paid by the settling defendants or to the "proportionate share of liability of the released parties, whichever amount is greater." *See Cooney,* 640 A.2d at 529; *LaBounty,* 497 A.2d at 307 (holding that both UCATA and the plaintiff's release gave the nonsettling defendants "a release [from the plaintiff] in the amount of the pro rata share that [the settling defendant] would otherwise [have been] required to [contribute]").

Nevertheless, the Calises urge that we should deprive the defaulted defendants of the very claim reduction-equal to the proportion of liability settled—that the Calises themselves had agreed to when they settled with HVCA and D'Ambra. They did so knowing perfectly well that they still had damage claims pending against the defaulted defendants. Yet, the Calises have conceded that a claim reduction in the amount of the consideration paid by the settling defendants would have been appropriate. In other words, the Calises would only partially honor the damage-reduction consequences they agreed to abide by in the release agreements. But they still would have us fully enforce the benefits of those releases by strictly applying § 10–6–8 to take away defaulted defendants' right to seek contribution from the settling defendants, while at the same time refusing to apply § 10–6–7 to give the defaulted defendants their corresponding claim reduction—equal to the greater of the consideration paid or the proportion of liability settled.

In support of this "heads-I-win, tails-you-lose" argument, the Calises argue that "if the Court were to allow a defaulted party to introduce evidence of liability of other parties, it would be contrary to the principles as enunciated in [*Bashforth*]." But our holding in *Bashforth* is completely consistent with allowing defaulted defendants to obtain the full claim-reduction protection of § 10–6–7. In *Bashforth,* we followed the well-established rule that "[w]hile a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Bashforth,* 576 A.2d at 1200 (quoting *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir.1974)). Therefore, because § 10–6–7 clearly expresses the method prescribed by the General Assembly for calculating the amount

17. *Relevant provision from HVCA Release:* "Should it appear that two (2) or more persons or entities are jointly or severally liable in tort for the alleged injuries to us, *the consideration for this Release shall be received in reduction of the total damages recoverable against all other tortfeasors or in the amount of the pro rata or proportionate share of liability of the released parties, whichever amount is greater.*" (Emphasis added.)

*Relevant provision from the D'Ambra's Release:* "It is further agreed by the undersigned that *the total amount of the damages recoverable by the undersigned from all other parties in any way liable for the aforesaid occurrence, injury or damage shall be reduced in compliance with [UCATA] to the extent, if any, of that fraction or portion or percentage of such total amount of damages against all other parties.*" (Emphasis added.)

of a plaintiff's damage-claim reduction when that plaintiff has settled previously with some but not all joint tortfeasors and because no statutory or common-law exception exists for ignoring this claim-reduction provision when assessing damages against defaulted defendants, I would hold that a determination during the proof-of-claim hearing of the proportional liability of the settling defendants in this case was one that was properly "limited to the question of damages." *Id.* In *LaBounty,* this Court held that "[UCATA] was free from ambiguity and that the words stated therein should be given their plain and obvious meaning." 497 A.2d at 306. In addition, the Court held that "[u]nder the mandate of the statute as well as the terms of the release [equivalent to the releases given by the Calises], it was the *duty* of the trial justice to give [the nonsettling defendant] the benefit of the pro-rata-share reduction." *Id.* (Emphasis added.)

Indeed, compelling a defaulted defendant to concede all the well-pleaded liability allegations in a complaint—including duty, breach and causation—provides a harsh-enough sanction with sufficient teeth to accomplish the important policy objectives of promoting efficiency and finality in litigation, while at the same time encouraging parties to avoid defaults and to answer in a timely manner.[18] But going even further and denying defaulted defendants the damage-claim reduction that UCATA imposes upon all plaintiffs who settle via joint-tortfeasor releases, is, in my judgment, an overly punitive sanction that unnecessarily turns our joint-and-several-liability law into an unduly harsh and quixotic measure; one that unjustly allows the Calises and other injured plaintiffs to recover more from defaulted defendants than their relative degree of fault for the total damages would warrant. For example, if the settling defendants' relative degree of fault in causing the Calises' damages would have required them to pay $60,000 but the Calises foolishly, opportunistically, or greedily released them for only $17,500, then the Calises would have us shift the consequences of their poor settlement bargain onto the less culpable defaulted defendants by reducing their remaining claim against the defaulted defendants by only $17,500 instead of by $60,000, as § 10–6–7 requires.[19]

**18.** Contrary to the majority's belief, there is no contention presented in this dissent that negates the consequences of the default by the Downing defendants. Nor is there any suggestion here that "the plaintiffs would bear the burden of proving not only the liability of the Downing defendants but also the specific proportion of their liability as a percentage of the total liability borne by all defendants including those who have settled with the plaintiffs." In their headlong rush to lash the Downing defendants to the stake for failing to answer plaintiffs' complaint, the majority has mischaracterized my position on this point. Far from negating the consequences of the Downing defendants' default, I explicitly confirm that their default bars them from contesting their liability to the Calises. But that is where the consequences of their default begin and end; their default should not bar them from showing that the amount of the Calises' damages claim is less than they are attempting to recover because the settling defendants' relative degree of fault for causing their damages was greater than the amount of money the Calises accepted from them in settlement.

**19.** The majority opinion worries that the application of § 10–6–7 in such a scenario would leave the injured plaintiff with less than a whole recovery and that such a result would discourage future settlements with less than all of the joint tortfeasors. But this result would be the same regardless of whether the nonsettling defendants had defaulted or not. Thus, the majority's concern addresses a general policy question implicit in all joint tortfeasor cases: should § 10–6–7's damage-claim reduction be applied at all? This, however, is a question best left to and already resolved by the General Assembly. Moreover, I have no qualms about leaving the burden of

The majority is also mistaken when it suggests that, under the theory espoused in this dissent, the Calises would bear the burden of proof concerning the proportion of liability borne by all defendants. I have advanced no such burden-of-proof theory here. Indeed, even assuming, arguendo, that the burden of proof concerning the settling defendants' proportional responsibility for the Calises' damages at all times rested with the Downing defendants, the trial justice erred when he barred those defendants from attempting to carry that burden by introducing evidence concerning this issue. Indeed, the majority's burden-of-proof argument serves only to underscore the trial justice's error in barring the defaulted defendants from introducing evidence that would, if credited, reduce the Calises' damages claim. Such a ruling had nothing to do with misplacing the burden of proof on the Calises, but it had everything to do with a palpable misunderstanding of not only the limited consequences of a default, but also the damage-claim reduction mandate of § 10–6–7 whenever plaintiffs provide a joint-tortfeasor release to settling defendants. Unfortunately, the majority's decision perpetuates this misunderstanding.

When a defendant is served with a complaint, he, she or it "should be able to decide on the basis of the relief requested whether * * * to expend the time, effort, and money necessary to defend the action." 10 Charles A. Wright, et al., *Federal Practice and Procedure:* Civil 2d § 2663 at 139 (1983). Thus, a joint tortfeasor who has chosen to default and to concede liability rather than to contest it, still maintains the right to contest damages, to seek contribution from fellow tortfeasors, or, in the case of a settlement and release of other joint tortfeasors, to have plaintiffs' damages claim reduced pursuant to § 10–6–7. *See Augustine,* 121 R.I. at 805, 402 A.2d at 1189. Thus, whether by contribution or by damage-claim reduction, UCATA assures that joint tortfeasors are not required to pay more than their proportional liability in damages and that plaintiffs will receive no more than one whole recovery for their damages.[20] *See Wilson,* 560 A.2d at 339. Moreover, because a "judgment by default is limited to

---

a bad bargain on those who enter into such arrangements in the first place.

**20.** The majority also is concerned that if we were to apply § 10–6–7 according to its terms in this case, it could result in nonsettling defendants paying less than they would have paid had there not been a settlement. This would in fact be the case here if, for example, the $17,500 received by the Calises was in excess of the settling defendants' proportional liability (or in excess of what they would have been compelled to contribute to the nonsettling defendants). A proper application of § 10–6–7, however, would reduce the Calises' remaining damage claim against the nonsettling defendants by the consideration paid (because it is greater than the proportional liability released). The Calises would still get a whole recovery, the settling defendants would be stuck with the burden of their bad bargain, and the nonsettling defendants would have to pay only what remained

of the claim. Apparently, this outcome bothers the majority in this type of case because it believes a defaulting defendant should be punished and not rewarded. But defaulting defendants concede only the well-pleaded liability allegations in the complaint against them; they do not concede allegations concerning the amount of damages. I believe that the liability penalty for defaulted defendants is a sufficiently serious and weighty sanction and that it needs no augmentation from us. The defaulted defendants in such a scenario are not entitled to a favorable claim reduction because they defaulted, but because their codefendants may have agreed to pay more than their fair share of the liability. Rather than rewarding defaults, such a result encourages settlements that do not overcompensate plaintiffs and that bear a close resemblance to the merits of plaintiffs' damage claims.

the relief demanded in the complaint," it would be fundamentally unfair to surprise defaulted defendants by compelling them not only to concede liability but also to forgo their right as joint tortfeasors either to seek contribution or to obtain the benefits of the damage-claim reduction provided for in UCATA. 10 Wright, *Federal Practice*, § 2663 at 140.

Such a judicial mutation of UCATA will result in inconsistent damage awards among joint tortfeasors, as the defaulting joint tortfeasors inevitably will be saddled with a disproportionate share of the liability. *See Hunt v. Inter–Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir.1985) (holding that "just as consistent verdict determinations are essential among joint tortfeasors, consistent damage awards on the same claim are essential among joint and several joint tortfeasors"). To avoid this undesirable outcome the Seventh Circuit has held that in actions "where liability is joint and several, [and there has been an] entry of default judgment against fewer than all defendants * * * a damages hearing may not be held until the liability of each defendant has been resolved." *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1324 (7th Cir.1983); *see also* 10 *Moore's Federal Practice* § 55.25 at 55–47 (3d ed. 1998) ("A default judgment entered against one of several defendants, each of which is jointly and severally liable for plaintiff's damages, establishes only liability and not the defaulting defendant's relative share of fault."). As the Calises have settled with the other joint tortfeasors in this case, UCATA's claim-reduction mechanism assures the equitable result referenced in *Dundee Cement*.

The Calises argue that depriving a defaulted joint-tortfeasor of § 10–6–7's claim reduction is justified by a need to "retain some element of a [default] sanction, which must be significant." Although precluding defaulted defendants from contesting liability appears to me to represent a most significant sanction for a default, the Calises find support for their ultra-punitive position in *McGarvin–Moberly Construction Co. v. Welden*, 897 P.2d 1310 (Wyo.1995). *McGarvin* held that "the sanction of default prohibited a defendant from filing a cross-claim or third-party complaint and from contending it was not liable." *Olsten Staffing Services, Inc. v. D.A. Stinger Services, Inc.*, 921 P.2d 596, 600 (Wyo.1996). But far from supporting the type of overly harsh sanction that the Calises propose, *McGarvin* holds that "[i]n order to defend the question of damages, [a defaulted defendant] must be able to defend on the question of the percentage of fault attributable to each actor." 897 P.2d at 1317. According to *McGarvin*, because "the question of fault is inextricably intertwined with the amount of damages that may be awarded against any defendant," a defaulted defendant must be allowed to "participate fully in the discovery process and on issues concerning proximate cause and damages." *Id.*

*McGarvin* addressed the application of Wyoming's comparative negligence statute, and it allows a defaulted defendant to establish proportional fault not only with respect to other defendants but also with respect to the plaintiff.[21] *Id.; see also,* Fed.R.Civ.P. 55; *Fehlhaber v. Indian Trails, Inc.*, 425 F.2d 715, 717 (3d Cir. 1970) (holding that because Delaware's

---

**21.** Nevertheless, a majority of courts have denied defaulted defendants the opportunity to assert comparative fault claims against plaintiffs in proof-of-claim damage hearings after the default. *See* Timothy M. Stubson, *I may be liable but it's not my fault!: The Wyoming Supreme Court rules that defaulting defendants can now challenge fault.* McGarvin–Moberly Const. v. Welden, 897 P.2d 1310 (Wyo.1995), 31 Land & Water L.Rev. 645, 653 (1996).

contribution statute required the court to apportion negligence among responsible parties, a defaulted party could litigate fault apportionment between the parties in a Fed.R.Civ.P. 55 damages hearing); *Burge v. Mid–Continent Casualty Co.*, 123 N.M. 1, 933 P.2d 210, 217 (1996) (holding that "a defaulting party admits only to the liability of his or her portion of the damages;" thus, "[w]hat must be determined after the entry of default is the dollar amount of the damages suffered by the injured party and the portion of those damages to be awarded against the defaulting party based upon the extent of its percentage of negligence"); *Schaub v. Wilson*, 969 P.2d 552, 558–60 (Wyo.1998) (holding that a defaulted defendant should be permitted to establish proportional fault with respect to the plaintiff for a comparative negligence claim even in a case where there are no codefendants).

Because the defaulted defendants in this case "concede that the default against them operates as a bar to the introduction of any evidence on liability as against Plaintiff[s]," we have no need to decide whether to go as far as the Wyoming court and allow defaulted defendants to invoke the comparative negligence statute, G.L. 1956 § 9–20–4,[22] to reduce the Calises' damage claims against them even further than the mandatory § 10–6–7 reduction. Indeed, the defaulted defendants in this case seek only to exercise their preexisting statutory right under UCATA to pay no more than their proportional responsibility for the Calises' damage claim. *See Wilson*, 560 A.2d at 339 (holding that the "purpose of [UCATA] is to avoid the injustice of having one joint tortfeasor pay more than his or her fair share of [the] damages").

An entry of a default compels a defendant to concede all the well-pleaded liability allegations raised in the complaint, but it does not entitle a plaintiff to shift the burden of a bad settlement bargain onto the defaulted defendants. A default is intended to encourage efficiency and finality in litigation, but not to insure plaintiffs against imprudent settlements. Given that, but for the releases, the defaulted defendants still could have pursued (through cross-claims, third-party impleader, or independent contribution actions) a more equitable distribution of the Calises' damages based upon the respective proportional responsibility of the other joint tortfeasors, it is both unfair and contrary to UCATA to hold them liable for more than their fair share of the Calises' damages.[23] *See Roberts–Robertson*, 598 A.2d

---

**22.** General Laws 1956 § 9–20–4 (Comparative negligence) provides:

"In all actions hereafter brought for personal injuries, or where personal injuries have resulted in death, or for injury to property, the fact that the person injured, or the owner of the property or person having control over the property, may not have been in the exercise of due care shall not bar a recovery, but *damages shall be diminished by the finder of fact in proportion to the amount of negligence attributable to the person injured*, or the owner of the property or the person having control over the property." (Emphasis added.)

**23.** The majority's refusal to apply § 10–6–7 is based largely on the erroneous assumption that application of § 10–6–7 is an affirmative defense that is waived by default. An affirmative defense is "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." Black's Law Dictionary, 430 (7th ed.1999). I agree that, with respect to the establishment of the defaulting defendants' liability to the Calises for negligence (i.e. duty, breach and causation), all affirmative defenses are absolutely barred. Yet, with respect to defenses relating to the amount of plaintiffs' damages, "those allegations relating to the amount of damages suffered generally are not [taken as true]." *Bashforth*, 576 A.2d at 1200. In order to "determine the amount of

at 1381 (holding that a joint tortfeasor may seek contribution pursuant to statute either by a separate action or by impleading the other joint tortfeasors under third-party practice). The Downing defendants' defaults vis-à-vis the Calises' damage claims in no way affected their rights with respect to claims against codefendants and other joint tortfeasors, *see* § 10–6–6 ("[T]he recovery of a judgment by the injured person against one joint tortfeasor does not discharge the other joint tortfeasors."); nor did it affect their ability to contest the amount of damages that the Calises can recover under § 10–6–7. Indeed, absent the settlements' claim-reducing effect, the defaulted defendants still could have sued any other joint tortfeasors for contribution notwithstanding their defaulted status. *See* § 10–6–4. Thus, the mere fact that the Calises chose to settle with two of the other joint tortfeasor defendants [24]—instead of allowing those claims to be decided on the merits—should

not affect the ultimate damages to be assessed against the defaulted defendants.

Finally, denying defaulted defendants the right to the claim reduction provided for in § 10–6–7 allows plaintiffs and other joint-tortfeasor defendants the strategic and tactical opportunity to shift a disproportionate amount of the damages onto defaulted defendants, while potentially allowing plaintiffs' to recover disproportionately more damages from these defaulted defendants than their relative degree of fault would warrant. Such a rule has the undesirable effect of shifting responsibility from the court to the plaintiffs and settling defendants to decide exactly how severe a default sanction to impose on defaulted defendants. In this case, it results in a monetary sanction that has nothing to do with the true proportional responsibility of the defaulted defendants to the plaintiffs or, for that matter, to the true amount of

damages," as required by Rule 55, the Court *must* apply § 10–6–7, which the General Assembly enacted specifically for cases like this one, involving settlement with some but not all joint tortfeasors. Thus, application of § 10–6–7 is not an affirmative defense offered by the nonsettling defendants, but rather a formula provided by the General Assembly for the calculation of damages that all Rhode Island courts are required to apply in situations like this one, whether requested to do so by the parties or not.

24. The Court suggests that § 10–6–7 should not be applied at all in cases involving defaulted joint tortfeasors. Yet their decision gives defaulted defendants a claim reduction equal to the consideration received by the Calises ($17,500), but only "because the plaintiffs concede that the award should be offset by the amount paid them in settlement." Such a holding means that, in the future, UCATA will be applied fully to deny defaulted joint tortfeasor defendants their right to seek contribution against joint tortfeasor defendants who have settled, but not at all to provide such defendants their corresponding right to a claim reduction. Under such a lopsided application of UCATA, even if plain-

tiffs settle with some joint tortfeasors, they can still obtain a full recovery of damages from any defaulted defendants. Although this will certainly preserve the plaintiffs' incentive to settle their claims, as the majority intends, in fact it will overcompensate such plaintiffs (as plaintiffs who settle with some joint tortfeasors can potentially collect double compensation and, in any event, more than their fair share of damages). Although intending to encourage settlements, such a holding will create distorted and unfair outcomes that contradict common sense, common law, and existing statutory law. We held in *Merrill v. Trenn*, 706 A.2d 1305, 1311 (R.I.1998), that "[t]o encourage early settlement of claims * * * the injured party ought to be able to structure an early settlement with any willing alleged tortfeasor *in a manner that enables him or her to be made whole*, or as near thereto as possible, *without providing him or her with a windfall or any excess recovery*." (Emphasis added.) The majority's holding subverts this purpose because it will allow plaintiffs to recover windfalls and excess recoveries.

the reduced damage claim that the Calises possessed against the defaulted defendants.

### Conclusion

For these reasons, I would hold that defaulted defendants' still have the right to be treated as joint tortfeasors under UCA-TA during proof-of-claim hearings. I reach this conclusion because their right to a damage-claim reduction was not affected by their default on plaintiff's liability claim. Therefore, I would hold that the trial justice erred as a matter of law by not reducing the Calises' damage claims according to § 10–6–7 and by not permitting the defaulted defendants to offer evidence proving that the amount of the money the Calises accepted in settlement was less than the settling defendants' proportional responsibility for the Calises' damages. In short, I would reverse and remand this case to the Superior Court for a hearing to determine the defaulted defendants share of the damages in accordance with UCA-TA.

Chief Justice WILLIAMS did not participate.