408 So.2d 426 (1981)
Gaston GERALD
v.
The LOUISIANA STATE SENATE; Michael O'Keefe, President of the Senate, et al.
No. 14740.
Court of Appeal of Louisiana, First Circuit.
December 22, 1981.
*427 Bryan E. Bush, Jr., Baton Rouge, for plaintiff-appellant Gaston Gerald.
William J. Guste, Jr., Atty. Gen., Kenneth C. Dejean, Asst. Atty. Gen., Baton Rouge, for defendants-appellees State of La., Hon. David C. Treen, Governor, and State of La., Hon. James "Jim" Brown, Secretary of State.
Camille F. Gravel, Jr., and Anna E. Dow, Baton Rouge, for defendant-appellee The La. State Senate and Michael H. O'Keefe.
Before CHIASSON, EDWARDS and LEAR, JJ.
LEAR, Judge.
Plaintiff, Gaston Gerald, was a Louisiana state senator representing the Fourteenth Senatorial District. On January 3, 1979, plaintiff was indicted by a federal grand jury for violations of federal laws, including the Hobbs Act (18 U.S.C. § 1951). Plaintiff was later convicted of attempted extortion under the federal Hobbs Act and on August 21, 1979, plaintiff was sentenced to serve five years at the Federal Correctional Institute, Fort Worth, Texas, and to pay a fine of $10,000.00. Following his conviction and pending his appeal, plaintiff was reelected to the state senate in December, 1979, for a new term of office beginning in 1980. He later took the oath of office and was seated in the senate. On October 21, 1980, plaintiff's conviction was upheld by the United States Fifth Circuit Court of Appeal and his application for a writ of certiorari was denied by the U.S. Supreme Court on February 23, 1981. Due to his imprisonment, plaintiff was unable to take his seat in the state senate when the 1981 regular session began on April 20, 1981.
The Louisiana State Senate then began disciplinary proceedings and, on April 28, 1981, Resolution Number 6 was passed to provide rules and procedures for any disciplinary or expulsion procedure against any member of the senate. That resolution also created the Select Committee on Discipline and Expulsion. On April 27, 1981, three resolutions were presented in the senate, calling for the expulsion of plaintiff. At that time, a meeting of the select committee was called for May 28, 1981, and on April 29, 1981, these documents and notice of the May 28th hearing were served on plaintiff in Fort Worth, Texas.
The select committee, which was made up of the senate as a whole, met on May 28, 1981. At that time, the senate voted to *428 defer action on two of the three resolutions and the select committee reported Resolution Number 12 out of committee without action. The senate itself then reconvened to act upon the resolution, and thereafter voted to approve Resolution Number 12 and expel plaintiff by a vote of 33-3, which was more than the two-thirds vote required for passage. The senate then notified the governor that plaintiff had been expelled from the senate and that a vacancy therefore existed.
On May 29, 1981, plaintiff filed suit seeking a judgment declaring that his expulsion from the Louisiana State Senate was null and void and ordering his reinstatement. Plaintiff further sought a temporary restraining order and an injunction prohibiting the president of the senate from sending notice to the governor and further enjoining the governor from ordering a special election. The district court did not issue a temporary restraining order, but set a hearing for June 3, 1981. The governor was notified of the expulsion and vacancy and on June 2, 1981, a proclamation was issued by the governor calling for a special election to replace plaintiff.
In response to plaintiff's suit, a peremptory exception of lack of jurisdiction ratione materi and an exception of no cause or right of action was filed on behalf of the defendants, the Louisiana State Senate and Michael H. O'Keefe, President of the Senate. A peremptory exception of no cause or right of action was also filed by defendants, State of Louisiana, and James H. "Jim" Brown, Secretary of State. By stipulation, the parties agreed to submit evidence on the declaratory judgment aspect of the suit and that all issues defined by the pleadings, including the exceptions, should be adjudicated by the court.
On June 15, 1981, the trial court rendered judgment dismissing plaintiff's suit, and a formal judgment to this effect was signed by the trial court on June 19, 1981. Plaintiff then perfected this appeal.
On appeal, plaintiff contends that he was denied due process in the expulsion proceeding, and that, based on this denial of due process, the trial court erred in affirming his expulsion from the Louisiana State Senate. Plaintiff further contends that the trial court erred in failing to hold that the senate was estopped from expelling him based on his lack of qualifications, because the senate had previously judged his qualifications to serve and had seated him on March 18, 1980. As the trial court stated, because of the reasons hereinafter expressed, plaintiff's estoppel argument is not relevant and will not be discussed.
In forming its written reasons for judgment, the trial court did extensive research and cited considerable authority in support of its judgment. In its lengthy and well-reasoned opinion, which we adopt in part, the trial court held as follows:
"Two constitutional articles are germane and controlling in this case. Article III, Section 7(A) of the Louisiana Constitution of 1974 provides:
"`Each house shall be the judge of the qualifications and elections of its members; shall determine its rules of procedure, not inconsistent with the provisions of this constitution; may punish its members for disorderly conduct or contempt; and may expel a member with concurrence of two-thirds of its elected members. Expulsion creates a vacancy in the office.'
"This article grants to the Legislature the exclusive authority to decide the qualifications and removal of its members. Article II of the Louisiana Constitution of 1974 declares:
"1. The powers of government of the state are divided into three separate branches: Legislative, executive, and judicial.
"2. Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.
"The latter article preserves the separation of powers that exist between the three branches of the government. Therefore, the judicial branch should exercise extreme *429 restraint in exercising its power with reference to the internal affairs of the legislative body, particularly with reference to its make-up and discipline of its membership.
"In Lee v. Lancaster, 262 So.2d 124, (La. App. 4th Cir. 1972), the court held that where the constitutional article providing that each House shall be the judge of the qualifications of its own members is applicable, as in the case of general election contest, the courts have no jurisdiction. The overwhelming weight of opinion as expressed by not only the courts of this State, but the opinion of the courts of our sister states is that the discipline and removal of a legislator is within the sole province of the body in which he serves as a member. French v. Senate of State of California, [146 Cal. 604,] 80 Pac. 1031 (1905); State ex rel. Rigby v. Junkin, [146 Fla. 347,] 1 So.2d 177 (1941) and English v. Bryant, 152 So.2d 167 (Fla.1963); Raney v. Stovall, 361 S.W.2d 518 (Ky.1962); Wixon v. Green, 521 P.2d 817 (Okl.1974) and Reaves v. Jones, 515 S.W.2d 201 (Ark.1974). Further, in In re Opinion of the Justices, 47 So.2d 586 (Ala. 1960) the Alabama Supreme Court declared that there was nothing in its Constitution which conferred either original or appellate jurisdiction on the Supreme Court or any other court to determine questions relating to the procedure for removing a state senator from office or declaring the office vacant. Likewise, there is nothing in the Louisiana Constitution which furnishes such a grant of review to the courts of this state. It appears that the only limited exception to this rule is where the legislative body clearly violates some express constitutional requirement, such as the requirement of due process mandated by Article XIV of the United States Constitution and, specifically in the case of Louisiana, Article I, Section 2 of the Louisiana Constitution of 1974. In McCarley v. Sanders, 309 F.Supp. 8, M.D. Ala.N.D. (1970) a federal court, in examining the question of whether it could inquire into the expulsion of a state senator from the Alabama Senate, held that a person may not be discharged or expelled from a state public office upon a ground involving criminal guilt, infamy, disgrace, or other grave injury to the individual until after such notice and hearing as is requisite for due process of law.
"In conclusion, the court concludes that it does not have jurisdiction of the subject matter and may not invade the determination made by the Senate regarding grounds for the removal of Gaston Gerald, and unless it is demonstrated by him that the Senate failed to grant him the essential rudiments of due process, such as notice, a hearing, an opportunity to be present, right to counsel, and right to cross-examine, his cause must fail.
"Now in this regard, the record, including the documents submitted and the testimony of the witnesses, reflect that following the denial of Gerald's application for writs of certiorari by the United States Supreme Court, the Senate began disciplinary proceedings against him. On April 28, 1981, Senate Resolution No. 6 was passed to provide rules of procedure for any disciplinary or expulsion procedure against any member of the Senate. This resolution created the Select Committee on Discipline and Expulsion. These rules provided that notice be given to the accused senator, for the appointment of an attorney to represent him if he did not have one, and provided for a public hearing, the opportunity to call witnesses, and the right to confront and cross-examine all witnesses called by the committee.
"On April 27, 1981, three resolutions were presented in the Senate calling for the removal of Mr. Gerald as a member of that body. A meeting of the Select Committee was fixed for May 28, 1981, by Senator O'Keefe, President of the Senate. Copies of all three resolutions calling for the senator's expulsion, together with copies of the rules were served on Mr. Gerald at the Federal Penitentiary in Fort Worth, Texas on April 29, 1981.
"On May 22, 1981, Mr. Bryan Bush, attorney for Gerald in this proceeding requested that the Senate petition the federal prison authorities to allow Gerald to attend the hearing of the Select Committee on the *430 issue of Mr. Gerald's expulsion. Pursuant to this request, the Senate passed Resolution No. 23, being a formal request to the United States Bureau of Prisons to implement the appearance of Gerald at the hearing on May 25, 1981. By subsequent communication, both Gerald and Bush were advised that they had the right to subpoena any witness which they may choose for the hearing. Apparently, Gerald chose to subpoena only Mr. James McPherson, his attorney in the criminal proceeding. This subpoena was duly served on Mr. McPherson and he appeared and testified at the hearing held on May 28, 1981 by the Select Committee. In addition, Mr. Bush was present at the meeting of the Select Committee and represented Mr. Gerald. The record reflects that Mr. Gerald advised not only his attorney, but Senator Nat Kiefer, that he did not wish to attend the meeting. Thereafter, the Select Committee reported Resolution No. 12 out of the committee without action. The Senate, after considerable argument, voted on the matter, and approved Resolution No. 12 calling for the expulsion of Senator Gerald by more than the two-thirds vote required for his removal.
"Petitioner's capable attorney argues that the rules of procedure were changed on him which constitutes an ex post facto law in violation of Article I, Section 9 of the United States Constitution and Article I, Section 23 of the Louisiana Constitution of 1974. Generally, the prohibition announced in these Constitutional provisions regarding ex post facto laws have been held to relate to substantive laws and not procedural laws and rules. State v. Carter, 362 So.2d 510 (La.1978).
"Petitioner further argues that as the Louisiana State Senate did not compel his appearance at the expulsion hearings, petitioner's right of confrontation and his right to compulsory process were violated. The record is replete with evidence showing that the Senate did everything within its power to obtain Gerald's presence at the hearing without avail. The Senate, similar to courts of this state, is unable to compel the appearance of a witness outside of its borders. Gerald's own counsel admitted to the Select Committee that his client did not wish to attend the meeting. However, the Court is of the opinion in any event, that the right of confrontation and compulsory process are only constitutionally mandated in criminal trials. In support of this conclusion, this court finds that the Supreme Court has held that an action seeking to enforce contempt adjudications made by the State Senate or House of Representatives is civil, not criminal, since it is one to enforce a prior adjudication analogous to a judgment rendered by a court of proper jurisdiction of the state. House of Representatives v. Bernard, 373 So.2d 188 (La. 1979).
"Finally, Gerald's counsel submits that there was certain documentary evidence which was filed in the record which constitutes hearsay and thus violates Gerald's right of cross-examination. It should be pointed out that the admission of hearsay evidence in administrative hearings is commonplace and its use does not infringe on any Constitutional principles. Michael [Michel] v. Dept. of Public Safety, Alcoholic Beverage Control Board, 341 So.2d 1161 ([La.] App. 1st Cir. 1976). But in any event, under Article III, Section 7(A), the Senate of course, is granted the authority and privilege to promulgate its own rules of procedure for the conduct of its affairs.[1]
*431 "In the final analysis, this Court is satisfied that a conscientious effort was made by the Senate to ensure that the petitioner was afforded every right available, including the holding of a fair hearing. While the Senate's efforts may not have met the sanction of appellate review in a criminal trial, it was more than adequate to conform to the basic requirements of due process in the particular forum and under the specific circumstances before it."
For the foregoing reasons, the judgment of the trial court is affirmed, plaintiff-appellant to pay all costs, both at trial and on appeal.
AFFIRMED.
NOTES
[1] We note that Mr. James McPherson, the attorney who represented plaintiff during his criminal trial in federal court, was called as a witness during the senate's expulsion hearing. Mr. McPherson, testifying under oath, stated that his testimony with regard to identifying the federal criminal indictment "would not be a violation of the attorney-client privilege. This document is a public record." Mr. McPherson further testified that plaintiff was convicted of the federal charge and was sentenced to five years imprisonment and a fine of $10,000.00. He also testified that plaintiff's conviction was affirmed on appeal to the United States Fifth Circuit Court of Appeal and that the United States Supreme Court denied the plaintiff's application for writs. Plaintiff's attorney at the senate hearing, Mr. Bryan Bush, was afforded an opportunity to cross-examine Mr. McPherson concerning the truth and correctness of the federal indictment and plaintiff's subsequent conviction and sentence. In fact, Mr. Bush himself admitted that the information as to plaintiff's conviction and sentence contained in the objected to documents was accurate. Plaintiff had ample opportunity, through cross-examination, to contest the truth and accuracy of the objected to documents, and the testimony and statements of plaintiff's attorneys itself dispels any question as to the accuracy of these documents. This testimony was competent evidence, properly received by the senate.