COLORADO COURT OF APPEALS
 2015 COA 170
 
 

Court of Appeals No. 14CA0901
City and County of Denver District Court No. 12CV5391
Honorable Catherine A. Lemon, Judge
Honorable Shelley I. Gilman, Judge

Charlene Dickinson,
Plaintiff-Appellant,
v.
G4S Secure Solutions (USA), Inc., a foreign corporation,
Defendant-Appellee.

JUDGMENTS AND ORDERS AFFIRMED
Division III
Opinion by JUDGE FOX
Webb and Berger, JJ., concur
Announced November 19, 2015

Cook & Pagano, PC, Stephen H. Cook, James L. Pagano, Lafayette, Colorado, for Plaintiff-Appellant
Zupkus & Angell, P.C., Richard L. Angell, Muliha A. Khan, Denver, Colorado, for Defendant-Appellee

¶1         This consolidated appeal arises from a premises liability case brought by Charlene Dickinson against Lincoln Building Corporation, a foreign corporation (LBC); Wells Fargo Bank National Association, a foreign corporation (Wells Fargo); and G4S Secure Solutions (USA) Inc., a foreign corporation (G4S). Dickinson sought damages for shoulder injuries sustained when she attempted to open a door leading to her workplace that she alleged was locked or malfunctioning.[1]

¶2         Although LBC and Wells Fargo do not dispute that they were served, they failed to either enter an appearance or file an answer. The district court entered default against them. They then filed a joint motion to set aside the default, which the court denied; and a joint motion to reconsider, which the court also denied. LBC and Wells Fargo appeal from those denials (case number 14CA1511), and we affirm.

¶3         Following the entry of default, the court conducted a damages hearing. LBC and Wells Fargo requested the opportunity to present evidence of the comparative fault of Dickinson and G4S at the hearing. The court denied the request. LBC and Wells Fargo also appeal that denial (case number 14CA1511) and, again, we affirm.

¶4         Meanwhile, G4S responded to the complaint and denied liability. Following a jury trial, the court entered judgment in favor of G4S, which Dickinson now appeals (case number 14CA901), and we affirm. Dickinson also appeals from the district court’s order denying her motion for a new trial (case number 14CA901). We affirm the order as well.
I. Dickinson v. LBC and Wells Fargo (Case Number 14CA1511)
A. Background
¶5         The record reflects the following sequence of events:

 August 29, 2012: Dickinson filed a complaint against LBC and Wells Fargo, asserting claims of negligence and premises liability.
 September 7, 2012: Dickinson timely served LBC and Wells Fargo with the complaint and summons, as evidenced by the returns of service filed in the district court.
 January 2, 2013: The court dismissed the case when

Dickinson failed to comply with the court’s Delay Reduction Order.

 January 2, 2013: Dickinson filed (1) a motion under C.R.C.P. 60(b) requesting that the court reconsider its dismissal order and (2) a motion for entry of default against LBC and Wells Fargo. Because LBC and Wells Fargo had not answered or entered appearances, the motions were not served on them.
 February 4, 2013: The district court vacated its dismissal order and reinstated the case. The order was electronically served on all appearing parties.
 March 6, 2013: The district court entered default against LBC and Wells Fargo.
 August 19, 2013: LBC and Wells Fargo entered an appearance.
 September 6, 2013: LBC and Wells Fargo filed a joint motion to set aside the default under C.R.C.P. 55(c) or C.R.C.P. 60(b).
 November 26, 2013: The court heard argument on, and denied, the motion to set aside the default.
 March 20, 2014: LBC and Wells Fargo filed a joint motion requesting that the court reconsider its denial of their motion to set aside the entry of default.
 May 8, 2014: The district court issued a written order denying LBC’s and Wells Fargo’s motion to reconsider.
 May 27-28, 2014: A damages hearing was held, in which LBC and Wells Fargo participated.
 June 18, 2014: the district court awarded Dickinson $527,098.67 in damages, $179,545.82 in prejudgment interest, and $21,118.98 in costs.

B. Entry of Default
¶6         LBC and Wells Fargo first contend that the court abused its discretion in declining to set aside its entry of default. They primarily argue that the default should have been set aside because (1) it was entered in violation of their right to due process of the law and (2) Dickinson’s complaint was not well-pleaded. We reject both contentions.

1. Standard of Review
¶7         Normally, a decision to grant relief from an entry of default is within the trial court’s discretion and is reviewed for abuse of that discretion. Goodman Assocs., LLC v. WP Mountain Props., LLC, 222 P.3d 310, 314 (Colo. 2010). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or contrary to law. Id.; Singh v. Mortensun, 30 P.3d 853, 856 (Colo. App. 2001). But whether a defaulting party’s due process right was violated by lack of notice presents a question of law that we review de novo. First Nat’l Bank v. Fleisher, 2 P.3d 706, 714 (Colo. 2000).
2. Law and Analysis
¶8         LBC and Wells Fargo argue that Dickinson’s failure to serve them with her C.R.C.P. 60 motion, which requested that the court reconsider its dismissal, and the court’s reinstatement order constitutes a due process violation and renders the court’s later entry of default invalid. We disagree. As pertinent here, C.R.C.P. 5(a) requires service of “every pleading subsequent to the original complaint,” and “every written motion other than one which may be heard ex parte.” However, “[n]o service need be made on parties in default for failure to appear.” C.R.C.P. 5(a).

¶9         Dickinson properly served LBC and Wells Fargo with the complaint and summons. LBC and Wells Fargo did not enter an appearance or file an answer until almost one year later, which was well after the court had entered default and long past the twenty-one day deadline required under C.R.C.P. 12(a)(1). See Plaza del Lago Townhomes Ass’n, Inc. v. Highwood Builders, LLC, 148 P.3d 367, 371 (Colo. App. 2006) (concluding that a defendant “appear[s] in the action” when he communicates with the court in a manner that demonstrates that he is aware of the proceedings and intends to participate in them). Thus, LBC and Wells Fargo were “parties in default for failure to appear,” and service of the C.R.C.P. 60 motion was not required. Compare Realty World-Range Realty, Ltd. v. Prochaska, 691 P.2d 761, 763 (Colo. App. 1984) (rejecting the defendants’ due process argument because, after being served with the complaint, they “did not make contact with the court prior to the entry of judgment against them), with F & S Constr. Co. v. Christlieb, 166 Colo. 67, 70, 441 P.2d 656, 657-58 (1968) (due process violation where the defendant had no actual notice of the suit, promptly filed a motion to set aside default, and presented a meritorious defense), and Bankers Union Life Ins. Co. v. Fiocca, 35 Colo. App. 306, 308, 532 P.2d 57, 58-59 (1975) (due process violation where defendants had appeared in the case and indicated a clear intent to defend).

¶10         LBC and Wells Fargo nonetheless argue that (1) they were not “in default” because they believed that the case had been dismissed or, alternatively, (2) Dickinson’s reinstatement motion constituted “new or additional claims for relief,” which must be served on defaulted defendants under C.R.C.P. 5(a). We reject these arguments.
¶11         First, nothing in the record supports LBC’s and Wells Fargo’s argument that they believed the case had been dismissed or that they relied on that dismissal in failing to respond or enter an appearance. In their motion to set aside default, LBC and Wells Fargo told the district court that they had just become aware of the case “a few weeks ago,” but they did not explain how. In a later court appearance, LBC and Wells Fargo conceded that they “had no earthly idea” how the case “got lost.” Then, in the motion requesting the court to reconsider setting aside default, LBC and Wells Fargo changed their position by stating that they knew about the case, were informed of the dismissal, and relied on that dismissal in declining to respond. In its order denying LBC and Wells Fargo relief from default, the district court found this contention to be without support and concluded
there is no factual support in the record for this statement. If there is any factual support for it at all, [LBC and Wells Fargo] are directed to file it with the Court immediately. Even if this statement were true, it would not constitute good cause for the failure to timely respond to the Complaint. On the contrary, it would show that [LBC and Wells Fargo] were aware of the case and their failure to file an Answer was deliberate.

Because this finding has record support, we decline to disturb it. C.R.C.P. 52; Leo Payne Pontiac, Inc. v. Ratliff, 178 Colo. 361, 366, 497 P.2d 997, 999 (1972).
¶12         Second, Dickinson’s motion did not constitute “new or additional claims for relief.” See C.R.C.P. 5(a). The C.R.C.P. 60(b) motion simply resurrected claims that had already been served on LBC and Wells Fargo in Dickinson’s original complaint. The existing claims were not amended nor were any new claims added. Contra Continental Oil Co. v. Benham, 163 Colo. 255, 257-60, 430 P.2d 90, 90-92 (1967) (defaulted defendants were not served with the plaintiff’s motion requesting relief from a foreclosure sale; plaintiff’s request, in substance, included new claims for relief that threatened potentially new consequences for the defendants, rather than merely revitalizing pre-existing claims). LBC and Wells Fargo do not cite any authority, nor have we found any in Colorado, requiring new service under these circumstances. Thus, new service was not required.

¶13         Accordingly, we conclude that the court did not err in rejecting LBC’s and Wells Fargo’s contention that the default should be set aside. See Goodman Assocs., 222 P.3d at 314.
¶14         We also reject LBC’s and Wells Fargo’s contention that the court should have set aside default because Dickinson’s complaint was not well-pleaded. They specifically state that, before entering default, the court should have “determine[d]: (1) [the] well-pleaded facts of the complaint, and (2) whether the well-pleaded facts constitute a legitimate claim for relief.”

¶15         LBC and Wells Fargo do not cite, and we cannot find, any Colorado legal authority to support the proposition that these findings are required before the court can enter default. To the contrary, default “shall” be entered “[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend.” C.R.C.P. 55(a). No cases interpreting this rule have required the court to also find that the complaint is “well-pleaded.” And we decline to impose such a requirement here. See, e.g., Springer v. City & Cty. of Denver, 13 P.3d 794, 804 (Colo. 2000) (declining to read additional restrictions into a statute).
¶16         Moreover, nothing in C.R.C.P. 60(b), or in the cases interpreting “good cause” in C.R.C.P. 55(c), suggests that, in reviewing its decision to enter default, the court must determine whether the original complaint was “well-pleaded.” This is not to say that a plaintiff’s complaint can be wholly inadequate. For example, courts are required to consider whether a defaulted defendant’s defense has merit in light of the plaintiff’s contentions. See C.R.C.P. 60(b); Singh, 30 P.3d at 855 (on a request to set aside an entry of default, the court considers whether the defendant has demonstrated excusable neglect, a meritorious defense, and that relief would be consistent with equitable considerations). And, here, the district court did so.

¶17         In denying LBC’s and Wells Fargo’s motions, the court found:

 LBC and Wells Fargo offered no credible excuse or explanation for their failure to respond to Dickinson’s complaint. And their speculative statement that they believed the case had been resolved following the court’s dismissal order, presented in their motion to set aside the default, was “elevate[d] to a statement of fact” in the motion for reconsideration but still lacked “factual support.”
 LBC and Wells Fargo asserted a “colorably meritorious defense” to Dickinson’s negligence claim as “there is some real question about whether the door was malfunctioning or whether the door was locked.”
  “[Dickinson] did everything right,” and “equities weighed in favor of [her] due to the passage of more than a year since [LBC and Wells Fargo] were served.”
 LBC and Wells Fargo failed to meet their enhanced burden of proof requiring “clear, strong, and satisfactory” evidence. See Sumler v. Dist. Court, 889 P.2d 50, 55-56 (Colo. 1995) (citing Buckmiller v. Safeway Stores, Inc., 727 P.2d 1112, 1116 (Colo. 1986), and applying C.R.C.P. 60(b)).

¶18         Thus, although the court found LBC’s and Wells Fargo’s defense had merit, the court also recognized that the existence of a meritorious defense alone is insufficient to justify vacating the default. See, e.g., Biella v. State Dep’t. of Highways, 652 P.2d 1100, 1103 (Colo. App. 1982), aff'd, 672 P.2d 529 (Colo. 1983). This is particularly true when, as here, the defendants fail to meet their statutory burden and equitable considerations weigh in the plaintiff’s favor. The district court ultimately concluded that LBC’s and Wells Fargo’s defense was outweighed by the significant passage of time and their inability to “offer any explanation at all for their failure to respond to [Dickinson’s] complaint for a year after they were properly served in the case.” Other courts have similarly disapproved of a party’s failure to act promptly in challenging default. See Goodman Assocs., 222 P.3d at 322 (disapproving of a party’s two-month delay in moving to set aside default); Ehrlinger v. Parker, 137 Colo. 514, 517-18, 327 P.2d 267, 269 (1958) (six-week delay).

¶19         For these reasons, we conclude that the district court did not err in rejecting LBC’s and Wells Fargo’s contentions that the default should be set aside because Dickinson’s complaint was not well-pleaded. See Goodman Assocs., 222 P.3d at 314.
C. Comparative Fault
¶20         LBC and Wells Fargo next present an issue of first impression in Colorado. They argue that the district court erred in declining their requests to present evidence of Dickinson’s comparative negligence and G4S’s pro rata liability at the damages hearing after entry of default. We disagree and conclude that LBC’s and Wells Fargo’s default constituted an admission of liability that precluded them from thereafter presenting evidence of others’ comparative fault.
1. Standard of Review

¶21         Whether to admit evidence is within the trial court’s sound discretion, and the court’s decision will not be disturbed absent a showing that the court abused that discretion. Bly v. Story, 241 P.3d 529, 535 (Colo. 2010). However, when a decision regarding the admission of evidence involves a question of law, we review the legal question de novo. Sunahara v. State Farm Mut. Auto. Ins. Co., 2012 CO 30M, ¶12. Here, we assess the legal role of comparative negligence and pro rata liability in the damages phase of default proceedings. Because this assessment raises a novel question of law, we review de novo the district court’s decision to exclude any evidence of comparative fault at the damages hearing. See id.
2. Law
¶22         To begin, an entry of default establishes a party’s liability. Kwik Way Stores, Inc. v. Caldwell, 745 P.2d 672, 678 (Colo. 1987); Snow v. Dist. Court, 194 Colo. 335, 337, 572 P.2d 475, 476 (1977); Singh, 30 P.3d at 855. When a trial court enters default against a defendant, the defendant’s liability is deemed admitted. Singh, 30 P.3d at 855. The allegations in the plaintiff’s complaint are also deemed admitted. People v. Richards, 748 P.2d 341, 347-48 (Colo. 1987).

¶23         An entry of default, however, is not an admission regarding damages. Kwik Way Stores, 745 P.2d at 678. Because an “entry of default is simply an interlocutory order that, alone, determines no rights or remedies,” Singh, 30 P.3d at 855, damages remain to be determined, Sumler, 889 P.2d at 55.
¶24         The trial court thereafter conducts a damages hearing where the defaulting defendant must have “the opportunity to participate fully.” Kwik Way Stores, 745 P.2d at 679. This includes a right “to cross-examine witnesses and to present mitigating evidence on unliquidated damages.” Id. LBC and Wells Fargo contend that this right should also include an opportunity to present evidence of others’ comparative negligence or pro rata liability. Because default establishes liability and the subsequent hearing is only meant to address damages, see Singh, 30 P.3d at 855, whether a defaulted party has a right to present such evidence depends on the general nature of these comparative fault doctrines — namely, whether they apply primarily to determine liability or damages.
¶25         Comparative negligence and pro rata liability are affirmative defenses. See Union Pac. R.R. Co. v. Martin, 209 P.3d 185-89, fn. 3 (Colo. 2009) (referring to comparative negligence and pro rata liability as affirmative defenses); Gordon v. Benson, 925 P.2d 775, 780-82 (Colo. 1996); see also C.R.C.P. 8(c) (including contributory negligence in a non-exhaustive list of affirmative defenses). Comparative negligence works to reduce a defendant’s damages by his degree of fault so that the defendant is not responsible for more than his fair share of the ultimate award. See § 13-21-111(1), C.R.S. 2015; Stone v. Satriana, 41 P.3d 705 (Colo. 2002). Similarly, pro rata liability permits a defendant to designate nonparties as “wholly or partially at fault” to lessen the degree of fault attributable to the defendant and to ensure that damages are apportioned accordingly. See § 13-21-111.5(1), C.R.S. 2015; Union Pac. R.R., 209 P.3d at 189.

¶26         Thus, in form and effect, these comparative fault defenses encompass aspects of liability and damages. See, e.g., B.G.’s, Inc. v. Gross, 23 P.3d 691, 694 (Colo. 2001).

¶27         However, when these defenses are raised, the analyses that follow — assigning fault and allocating damages — are not conducted simultaneously. Courts or juries first determine fault and then damages are allocated based on that fault apportionment, not vice versa. See, e.g., § 13-21-111.5; Bohrer v. DeHart, 961 P.2d 472, 476 (Colo. 1998). In other words, a plaintiff’s comparative negligence and another’s pro rata liability are substantive defenses that function only to decrease the defendant’s percentage of liability. Indeed, comparative fault defenses are only applicable when there is first substantiated evidence that both parties are at fault. See Gordon v. Benson, 925 P.2d 775, 778 (Colo. 1996); Powell v. City of Ouray, 32 Colo. App. 44, 48-50, 507 P.2d 1101, 1105 (1973). Once (and if) liability is partitioned, an apportionment of damages based on that division follows. See B.G.’s, 23 P.3d at 693 (comparative fault defenses require determining the degree of fault for which a defendant is liable and then apportioning the amount of damages that appropriately reflects that degree of liability); Bohrer, 961 P.2d at 476 (jury first determines percentages of fault and total damages and the judge thereafter divides the total award according to the jury’s fault allocation); Barton v. Adams Rental, Inc., 938 P.2d 532, 535 (Colo. 1997) (fact finder considers “the percentage of a nonparty’s negligence or fault” when apportioning liability); Antolovich v. Brown Grp. Retail, Inc., 183 P.3d 582, 591 (Colo. App. 2007) (same).

¶28         As mentioned, default in Colorado fully establishes a defaulting party’s liability. Kwik Way Stores, 745 P.2d at 678. A damages hearing is only held to determine the amount of damages owed, and any discussion of the liability underlying that award is prohibited. See Singh, 30 P.3d at 855; contra Reid v. Berkowitz, 2013 COA 110M, ¶¶28-30 (finding error in trial court’s refusal to allow a nondefaulted defendant to contest liability through an apportionment of fault between the defendant and the already-defaulted defendants). Thus, we see no room at the damages hearing for comparative negligence and pro rata liability defenses, which apply primarily to a liability determination.
¶29         In contrast, the position advanced by LBC and Wells Fargo would weaken the efficacy and purpose of default. It would allow a defaulted party to maintain a defensive posture on liability as though default had never occurred. It would also distort the nature of the damages hearing by expanding it from the subject of damages to the subject of liability. In addition, LBC’s and Wells Fargo’s proposal threatens to undermine a jury verdict. At trial, they sought, and continue to seek, to attribute fault to G4S — a nondefaulted defendant — even though a jury found that G4S was not liable to Dickinson.

¶30         Moreover, because comparative negligence and pro rata liability are affirmative defenses, they generally must be set forth in the defendant’s pleadings. See C.R.C.P. 8(c); Buena Vista Bank & Trust Co. v. Lee, 191 Colo. 551, 553, 554 P.2d 1109, 1110 (1976). Logically, a defaulted defendant who “has failed to plead or otherwise defend,” C.R.C.P. 55(a), could not have met this requirement and would therefore be precluded from raising these affirmative defenses later. See Buena Vista Bank, 191 Colo. at 553, 554 P.2d at 1110.
¶31         For these reasons, we conclude that the doctrines of comparative negligence and pro rata liability, even though they may affect an assessment of damages, are primarily substantive defenses that go to the plaintiff’s right of recovery and the defendant’s liability. They are not, therefore, available to defaulted defendants at the damages hearing.

¶32         We recognize that our conclusion is at odds with some jurisdictions that have addressed this issue. For example, the New Mexico Supreme Court, in Burge v. Mid-Continent Casualty Co., 933 P.2d 210, 217 (N.M. 1996), determined that the comparative fault of other parties is directly related to the defendant’s damages. The court held that “a defaulting party admits only to the liability aspect of the complaint, thus reserving for the damages hearing a determination of damages in accordance with the application of comparative negligence.” Id. Additionally, in McGarvin-Moberly Construction Co. v. Welden, 897 P.2d 1310, 1317 (Wyo. 1995), the Wyoming Supreme Court allowed a defaulted defendant to present evidence of comparative negligence with respect to damages because “the question of fault is inextricably intertwined with the amount of damages that may be awarded against any defendant.” See also Olsten Staffing Servs., Inc. v. D.A. Stinger Servs., Inc., 921 P.2d 596, 601 (Wyo. 1996) (“If the entry of default is upheld, that does not abrogate [the defendant’s] rights to participate in the proceedings with respect to issues of proximate cause and damage pursuant to our comparative negligence rules.”). Likewise, in Jordan v. Elex, Inc., 611 N.E.2d 852, 855 (Ohio Ct. App. 1992), the Ohio Court of Appeals affirmed a trial court’s decision to permit a defaulting defendant to assert comparative negligence to limit or negate its responsibility for damages. Cf. Kalamazoo Oil Co. v. Boerman, 618 N.W.2d 66, 73-74 (Mich. Ct. App. 2000) (holding that it is within the trial court’s discretion whether to allow a defendant who defaulted for discovery sanctions to introduce evidence of comparative fault).

¶33         Nonetheless, decisions in many other jurisdictions that have considered the matter are consistent with our analysis and support our conclusion. A decision from Rhode Island is illustrative. In Calise v. Hidden Valley Condominium Association, Inc., 773 A.2d 834, 839-42 (R.I. 2001), the supreme court concluded that defaulted defendants were not entitled to present evidence of comparative fault at a damages hearing because the “default order operated as an unqualified admission of their liability . . . and precluded them from raising any affirmative defenses” or contesting “the merits of the lawsuit.” The Calise court added, “[t]he entire theory of a default is that a defaulting defendant has forfeited the privilege of disputing liability,” including “the proportion of liability.” Id. at 841.

¶34         Similarly, the Florida Supreme Court has stated that “[w]hen a default is entered for failure to plead, a party has the right to contest damages caused by his wrong but no other issue. No presentation of comparable fault would be proper.” Harless v. Kuhn, 403 So. 2d 423, 425 (Fla. 1981) (citation omitted). And, in Fulton County Hospital Authority v. Hyman, 376 S.E.2d 689, 691 (Ga. Ct. App. 1988), the Georgia Court of Appeals refused to allow a defaulted defendant in a medical malpractice action to present evidence at a damages hearing that the infant plaintiff received inadequate home care because liability had already been established by default. The court stated that “once liability has been established, evidence which is proffered for the purpose of establishing the appropriate amount of damages, but which at the same time tends to suggest comparative or contributory negligence on the part of the plaintiff, is inadmissible.” Id.

¶35         Moreover, in Thomas by Thomas v. Duquesne Light Co., 545 A.2d 289, 295 (Pa. Super. Ct. 1988), aff’d and remanded, 595 A.2d 56, the Superior Court of Pennsylvania concluded: “The doctrine of comparative negligence, even though it goes in part to the assessment of damages, is primarily a substantive defense going to a plaintiff’s right to recover and, therefore, is not available as a defense to a defendant against whom a default judgment has been entered.”
¶36         Courts in other states have reached similar conclusions. See, e.g., Jones v. McGraw, 288 S.W.3d 623, 627 (Ark. 2008) (“[A] damages hearing should [not] permit [a] defaulting defendant a second chance to defen[d] her liability.”); Adkisson v. Huffman, 469 S.W.2d 368, 377-78 (Tenn. 1971) (reversing a trial court’s decision to allow a defaulted defendant to argue and prove the plaintiff’s contributory negligence at the trial to assess damages only).
¶37         We consider these decisions well-reasoned, and we align with these jurisdictions in concluding that a defaulted defendant, whose liability has already been determined, is not allowed to raise comparative negligence and pro rata liability defenses at a hearing intended solely to address the damages owed.

¶38         Applying this authority, we conclude that the district court did not err in declining LBC’s and Wells Fargo’s request to present evidence of Dickinson’s comparative negligence and G4S’s pro rata liability at the damages hearing. The court’s conclusions that default precluded “any litigation at [the damages] hearing of any fault issues” and that “this is a trial of damages only and not of fault or apportionment of fault or comparative fault” were correct.
II. Dickinson v. G4S (Case Number 14CA901)
A. Background
¶39         During the relevant period, G4S provided security services to Wells Fargo. As pertinent here, G4S was responsible for locking and unlocking the bank’s doors at times prescribed by Wells Fargo. Dickinson alleged that G4S negligently failed to unlock one of Wells Fargo’s doors, and when Dickinson tried to open the “unexpectedly locked” door, she suffered a significant shoulder injury.
¶40         G4S denied liability and a jury trial followed.

¶41         At trial, Dickinson also contended that, by not keeping the subject door unlocked, G4S violated section 3303(c) of the Denver Building Code (1982) (hereinafter Code), which provides as follows:
Type of Lock or Latch. Exit doors shall be operable from the inside without the use of a key or any special knowledge or effort. Doors shall not be equipped with more than one latch or locking device. The use of double keyed locking devices is prohibited.
¶42         Dickinson’s expert — qualified as such in architecture and building codes — testified that this provision of the Code applied to the subject door and required that it be unlocked during business hours. The expert added that a failure to unlock the door constituted a Code violation. He later conceded, however, that he was not 100% certain that section 3303(c) applied to the subject location.
¶43         Dickinson requested the following negligence per se jury instruction:
At the time of the occurrence in this case, the following building codes of the City and County of Denver, State of Colorado applied:
Building Code of the City and County of Denver, Section 3303(c): Type of Lock or Latch. Exit doors shall be operable from the inside without the use of a key or any special knowledge or effort.
A violation of this building code constitutes negligence.
If you find such a violation, you may only consider it if you also find that it was the cause of the claimed injuries or losses.

¶44         G4S objected to the instruction, arguing that section 3303(c) did not apply to G4S because it was a security company. The court agreed and denied the request. The court later explained that the tendered instruction
was not supported by the evidence. Defendant G4S Solutions provided security services to the building owner and the basis of Plaintiff’s claim against it was that its security guard failed to unlock the door on time on the day in question. If the cited code provision was applicable, which was not proven, it required a door latching mechanism that was operable without having to be unlocked, something that was not alleged to be the responsibility of [G4S].
B. Negligence Per Se Instruction
¶45         Dickinson contends that the district court erred in declining to instruct the jury on negligence per se because Dickinson adequately demonstrated that G4S violated section 3303(c) of the Code. Dickinson also argues that the court improperly denied her motion for a new trial on the same grounds. We discern no error.

1. Standard of Review
¶46         “A trial judge is obligated to correctly instruct the jury on the law applicable to the case.” Jordan v. Bogner, 844 P.2d 664, 667 (Colo. 1993). So long as this obligation is met, the court retains broad discretion over the form and style of the instructions, and an appellate court will not overturn the court’s decision absent a showing that the court abused that discretion. Clough v. Williams Prod. RMT Co., 179 P.3d 32, 40 (Colo. App. 2007). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or misapplies the law. Day v. Johnson, 255 P.3d 1064, 1067 (Colo. 2011).
¶47         Moreover, we will not reverse based on an improper jury instruction unless it prejudices a party’s substantial rights and the record shows that the jury might have returned a different verdict had a proper instruction been given. Clough, 179 P.3d at 40.
2. Law

¶48         Negligence rests on the premise that a tortfeasor has a legally imposed duty or a standard of conduct to which he must adhere. Dare v. Sobule, 674 P.2d 960, 963 (Colo. 1984). “[N]egligence per se provides that certain legislative enactments such as statutes and ordinances can prescribe the standard of conduct of a reasonable person such that a violation of the legislative enactment constitutes negligence.” Lombard v. Colo. Outdoor Educ. Ctr., Inc., 187 P.3d 565, 573 (Colo. 2008). A party may recover under a claim of negligence per se if it is established that the defendant violated the statutory standard and the violation was the proximate cause of the injuries sustained. Id.
¶49         However, the plaintiff must also show that he is a member of the class the statute was intended to protect and that the injuries he suffered were of the kind the statute was enacted to prevent. Id.
3. Analysis
¶50         We conclude that the district court did not abuse its discretion in rejecting the tendered negligence per se instruction.
¶51         Section 3303(c) of the Code requires an exit door to be operable without a key or special knowledge. It addresses the type of door latching mechanism required — one that would be operable without having to be unlocked. This would presumably apply to regulate the actions and ultimate product of the individuals or company responsible for constructing the door and/or maintaining the latching mechanism, not to a building’s security provider — even if the provider is required to lock and unlock the door daily. As Dickinson’s expert testified, the Code provisions primarily “govern the way the buildings are designed and constructed.”

¶52         Other provisions of the Code refer to section 3303(c) and imply that it sets guidelines for the type of latching or locking mechanism permitted. See, e.g., Code § 1807(b)(2)(B) (“Locks or latches shall be in accordance with Section 3303(c) except that doors from occupied areas into the refuge area and into stairways shall be provided lever type door handles or panic devices.”). And the exceptions to section 3303(c) address other types of latching or locking devices that may be used, such as sliding surface bolts or double keyed locks — again implying an intended regulation of the lock’s or latch’s type or features.

¶53         G4S was responsible for securing and unlocking the subject door according to Wells Fargo’s directions and using the door’s already-constructed locking or latching mechanism. G4S was not responsible for the construction or selection of the door’s locking or latching mechanism, and Dickinson has not alleged otherwise. Thus, as the district court determined and despite the building code expert’s testimony, section 3303(c) was inapplicable in the context of G4S’s alleged negligence.
¶54         Even if we assume that section 3303(c) of the Code applied to the subject door and that G4S violated it, Dickinson has not adequately demonstrated that her shoulder injuries were of the kind the Code provision was enacted to prevent. See Lyons, 770 P.2d at 1257; see also People in Interest of C.L.S., 313 P.3d 662, 672 (Colo. App. 2011) (“[W]e may affirm on grounds different from those employed by the district court.”). Dickinson’s building code expert testified that the purpose of the section 3303(c) was to ensure that people could “get out of the building.” The provision applied specifically to exit doors so that “people can get out of the building with whatever path they, they might choose to get out by.” Dickinson cites no legal authority, and we have found none, standing for the proposition that section 3303(c) was enacted to protect against injuries potentially incurred when attempting to open a locked exit door. And nothing in the building code expert’s testimony or in the Code itself suggests that it was intended to protect against such injuries.

¶55         Finally, Dickinson has not adequately demonstrated that she was prejudiced by the absence of a negligence per se jury instruction. To the contrary, the special verdict forms reflect that the jury determined (1) Dickinson sustained injuries, (2) G4S was not negligent, and (3) G4S, if negligent, did not cause Dickinson’s injuries. In other words, the jury determined that even if G4S was negligent in not unlocking the door (which was the alleged Code violation), this was not the proximate cause of the injuries sustained. See Lyons, 770 P.2d 1257. Thus, even if the negligence per se instruction had been given, we cannot conclude that the jury might have returned a different verdict. See Clough, 179 P.3d at 40; see also Leaf v. Beihoffer, 2014 COA 117, ¶12 (“If a plaintiff fails to establish any one of [the negligence] elements, any errors related to ther elements are necessarily harmless because plaintiff cannot prevail in any event.”).

¶56         We therefore discern no basis for reversal of the district court’s denial of Dickinson’s request to instruct the jury on negligence per se.
¶57         Because we conclude that the court did not err in declining to give the tendered instruction, we also reject Dickinson’s contention that a new trial should have been granted on the issue.
III. Conclusion
¶58         The appealed judgments and orders in case numbers 14CA1511 and 14CA901 are affirmed.
JUDGE WEBB and JUDGE BERGER concur.

[1] Dickinson also sued 1700 Broadway Investments, LLC; Securitas Security Services; USA, Inc.; and The Broe Group. She settled with 1700 Broadway Investments, LLC and The Broe Group, and they were dismissed from the case. Dickinson voluntarily withdrew her claim against Securitas Security Services, USA, Inc. None of these defendants is a party to this appeal.